The Metropolitan Telephone, &c., Co. agt. The Colwell Lead Co.

# N. Y. SUPERIOR COURT.

## THE METROPOLITAN TELEPHONE AND TELEGRAPH COMPANY agt. THE COLWELL LEAD COMPANY.

*New York (city of) — Obstruction of street — Right of telegraph company to erect poles in a street — Legislature no power to authorize such erection.*

The legislature has no power, so far as the rights of abutting owners are involved, to authorize the use of the streets of the city of New York for the erection of poles to conduct telegraph and telephone wires, the legislative authority over the streets being limited to a regulation of use for which the streets are held by the city in trust, which is to appropriate and keep them open as public streets; and such erection of telegraph poles is not a street use, and does not come within the terms of the trust. A telegraph company cannot therefore invoke the equitable power of the court to restrain interference by abutting owners with its poles in city streets; even though its lines have been erected under legislative sanction.

*Special Term, August,* 1884.

MOTION for an injunction.

*Burton N. Harrison* and *H. G. Atwater,* for the motion.

*L. E. Chittenden,* opposed.

INGRAHAM, *J.* — In the limited time at my disposal I shall only attempt to state the conclusions to which I have arrived after a careful and somewhat extended examination of the principles involved, and the authorities to which my attention has been called.

The act of 1813, under which the street in question was taken for a public street, provides that upon the confirmation of the report of the commissioners appointed under said act by the supreme court, "the said mayor, aldermen and commonalty of the city of New York shall become and be seized in fee of the said lands, &c., in the report mentioned, that shall or may be required for the purpose of opening the said streets, &c., in trust, nevertheless that the same be appropri-

ated and kept open for or as part of a public street, &c., for-
ever, in like manner as the public streets, &c., in said city are
and of right ought to be."

The fee thus vested in the city was in trust for a specified
purpose, limited by the purpose for which the property was
taken, and the trust upon which it was held; and the use to
which the property could be put by the city must be limited
by said trust, viz., to be appropriated and kept open as a pub-
lic street.  In *The People* agt. *Kerr* (27 *N. Y.*, 188), and the
cases that have followed that case, it was held that a street
railroad authorized by the legislature to be built in a street
was valid as a proper regulation as a street use.  In the case
of *Mahady* agt. *Bushwick Railroad Company* (91 *N. Y.*,
148) the court upheld those cases as deciding that such a horse
railroad was a structure consistent with the rights of the
abutting owners in the streets, and these cases can now only
be considered as authority for holding that such a railroad is
a street use, and a use which it is within the power of the
legislature to control.  The power of the legislature over the
street is, however, not unlimited; it is to govern and regulate
such use or interest in the land as vested in the corporation
under the provision of the law for the taking of the property.
The city took the property in trust to appropriate it as a pub-
lic street, and so far as it held it for a public street it was sub-
ject to the control of the legislature.

That the power of the legislature over the streets is limited,
and that the legislature had no authority to authorize a
structure in a street that is inconsistent with such street use,
was held in the *Story case* (90 *N. Y.*, 122), and in discussing
the question in that case, judge DANFORTH, says, at page 155:
"Within this principle its (the street's) surface might be
broken up for the insertion of gas or water pipe, or sewers,
or occupied by rails imbedded therein for surface railroad, but
its limit would be found in these and like uses."  It appears,
therefore, that the power of the legislature is limited to a
regulation of the use for which the property is held by the

city in trust. As judge DANFORTH says in the *Story case* (*supra*, 157): "It is certainly well settled that when a grant is made or trust created for a specific and defined purpose, the subject of the grant or trust cannot be used for another and foreign purpose without the consent of the parties from whom it was derived, or for whose benefit it was created.

Under this statute the city takes the fee in trust to be appropriated for a public street. That is "a specific and defined purpose." The property is paid for by the abutting owners; neither the city nor the state pay the amount awarded for the taking of the property, but the owners of the land on the street pay for whatever property is taken. The statute provides that such payment shall be apportioned among such abutting owners as they shall be benefited by the appropriation of such property as a public street; and that such abutting owners have an interest in the streets is recognized in the *Story case* (*supra*) and *Mahady* agt. *Bushwick Railroad Company* (*supra*). I think, therefore, that the powers of the legislature to regulate the streets are confined to the uses for which they were taken, viz., to be appropriated and kept open as public streets. The plaintiff owns and operates a telephone line in Thirty-ninth street, and uses poles to conduct the wires used in such business, and I am clearly of the opinion that such a use of the streets is not a street use and does not come within the terms of the trust upon which the city holds the fee of the streets; and that so far as the rights of abutting owners are involved, the legislature had no power to authorize plaintiffs to use the streets for such a purpose.

Plaintiffs cite the case of *The People* agt. *The Metropolitan Telephone and Telegraph Company* (31 *Hun*), but in that case the people were objecting to the use of the streets by plaintiffs, and plaintiffs had the consent of the people for such use. As was said in the *Story case* (*page* 160), in speaking of the authority given by the legislature, "so far as the public is concerned it may stand; and not so far as to the individual." I do not consider it necessary to express an opinion as to the

validity of the license given by the city to the defendants. Defendants do not ask the interposition of the court. Plaintiffs do ; and before the court should interfere they must show that they have a vested right, which may be greatly affected by the act sought to be restrained (*City of New York* agt. *Mapes*, 6 *Johns. Ch.*, 50).

It might be claimed with much force that, as according to the well settled rule that a trustee takes no greater title in the property conveyed to him than is necessary to carry out the terms of his trust, that the city of New York took, under the act in question, only such a fee as would be necessary to appropriate and keep open the street as a public street, and that it not appearing that the portion of the street below the surface sought to be used by defendants was necessary to such use, that the fee of such portion of the street did not pass to the city as such trustee, by reason of the proceedings under which the city acquired title to Thirty-ninth street; and consequently defendants were never divested of the right to use the part of the street in question so long as such use did not interfere with the use of the street as a public street.

It is also claimed that, as defendants had acquiesced in the use of the street by the plaintiffs, they should be now enjoined from interfering with such use. But, as before said; plaintiffs, and not defendants, ask for an injunction, and while under such circumstances a court of equity might refuse an application of the defendants to restrain plaintiffs from maintaining the poles, it does not relieve the plaintiffs from the necessity of showing that some right that belongs to them is about to be invaded.

There are several other questions that were discussed in this case which I have examined, but on the whole case I am of the opinion that plaintiffs have failed to make out a case which would justify me in granting the injunction prayed for, and the motion must be denied and the temporary injunction dissolved.