HIRAM WOOD, Respondent, v. MITCHAEL D. LAFAYETTE, Appellant.

An owner of land out of possession has no right of action for injuries to the land until after he has recovered the possession.

Where the original entry of the one in possession was tortious, the owner can only recover for the original trespass, not for subsequent acts injurious to the land, such as the felling of trees, etc.

In an action of trespass upon lands, plaintiff claimed title under a deed which described the south line of the premises conveyed as running "along the north side of land formerly owned by James Mann," to whose title defendant had succeeded. The question in dispute was as to the location of this line. To locate it plaintiff gave in evidence an agreement executed in January, 1867, between plaintiff, defendant, defendant's grantee W., and C., the owner of lands adjoining defendant · on the west, between whom and defendant a litigation was then pending as to their division line. The agreement purported to have been executed to settle this litigation, and also the line between plaintiff and defendant. It provided that W. should procure a surveyor to go upon the land *occupied by defendant* and make a survey thereof. This land was described in the agreement as a rectangular piece, the east and west lines of which were twenty-six chains sixty-seven links in length. The southerly line was fixed by reference to monuments, and was not in dispute. The agreement further provided that James Mann, a son of the former owner, should designate the line between plaintiff and defendant "as the same existed when his father occupied" defendant's lot, and that so much of the land described as the line so designated cut off W. should pay defendant for at a specified price per acre, defendant to have the privilege to move the fence then standing between his lot and plaintiff's land on to the line so designated, which should thereafter be the boundary line. The fence referred to ran through woodland. Plaintiff's evidence tended to show it was begun before, but not completed until after, the agreement. Defendant's evidence was to the effect that it was completed before. Plaintiff claimed that the line, as it existed when Mann was owner, was twenty-four links south of this new fence, and the strip of land between the two lines was the *locus in quo*. The alleged trespass was cutting trees therefrom after the execution of the agreement. Before any thing had been done thereunder defendant served notice of revocation of all authority given to James Mann the younger. W., however, employed a surveyor, who ascertained the southerly and westerly lines as described in the agreement, but ran the northerly line as pointed out by said James Mann, which was the line as claimed by plaintiff; this, the surveyor testified, was but twenty-six chains twenty-

four links north of the south line.   The testimony as to the location of the line during Mann's ownership, and as to the possession of the *locus in quo* prior to the erection of the fence, was conflicting.   Defendant offered in evidence the deeds under which he claimed title, which described the land as in the agreement, and offered to prove that they included the *locus in quo*.   This evidence was rejected.  *Held,* error; that notwithstanding the agreement, until the line was ascertained under it defendant was entitled to possession of the land to which he had the paper title; that the designation of the land by Mann after the revocation of his authority was of no effect; that even if the agreement barred defendant from claiming title according to his deed, it did not make a prior entry tortious; that if the land was not fenced when the agreement was made, as it was woodland, neither party had the actual physical possession, and it was material to inquire who had the paper title; that the deeds were competent on the question of possession, and also as showing that defendant's entry and taking possession was under a *bona fide* claim of title; and so long as he held possession, even if his title should ultimately prove invalid, he was not liable in trespass for injuries to the land.

Defendant also offered to show that at the time of the agreement he was, and ever since had been, in the actual and exclusive possession of the *locus in quo* claiming title.   This evidence was excluded, except so far as it tended to show the division line as provided in the agreement. *Held,* error.

Also, *held,* that the agreement on its face admitted that defendant was in the occupation of the land therein described, which included the *locus in quo.*

(Argued December 21, 1876; decided January 16, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department affirming a judgment in favor of plaintiff, entered upon a verdict.

This was an action of trespass for cutting trees upon lands alleged to be in plaintiff's possession.   It was originally brought in Justice's Court.   Defendant denied the trespass and pleaded title.   Plaintiff thereupon brought action in the Supreme Court.   The case upon a former appeal is reported in 46 New York, 484.   The facts are sufficiently stated in the opinion.

*John Brotherson* for the appellant.   The court erred in not nonsuiting plaintiff on the ground that he was not in possession in fact of the *locus in quo* when the injuries complained

of were committed. (*Frost* v. *Duncan*, 19 Barb., 560; *Bird* v. *Bingham*, 18 id., 494.) It was error to exclude, under a general objection, the offer of defendant to show in connection with his deeds that they embraced the *locus in quo*. (*Munro* v. *Merchant*, 28 N. Y., 9, 41, 45; Code, § 83, sub. 4.) The intention of the parties was to be drawn from the deed itself and not elsewhere. (*Van Wyck* v. *Wright*, 18 Wend., 157; *Adams* v. *Rockwell*, 16 id., 285; *Loiscott* v. *Fornald*, 5 Greenl., 496; *Seaman* v. *Hogaboom*, 21 Barb., 398; *Clark* v. *Baird*, 9 N. Y., 183; *Drew* v. *Swift*, 46 id., 204; *Wood* v. *Lafayette*, 46 id., 484; *Munro* v. *Merchant*, 28 id, 41, 45; Code, § 83, sub. 4.) Where a deed bounds the premises by the line of an adjoining owner, the line thus referred to, as it appears in the deed of the adjoining owner, is incorporated into the deed. The party having the *onus* of proving the location of the line, must produce the deed so referred to and locate the line in accordance therewith. (*Jackson* v. *Briton*, 4 Wend., 570; *Jackson* v. *Parhhurst*, id., 374; *Jackson* v. *Camp*, 1 Cow., 612; *French* v. *Cohort*, 1 N. Y., 101; *Northrup* v. *Summey*, 27 Barb., 194, 196; 4 Kent, 466; *Varick* v. *Smith*, 9 Paige, 547; *Glover* v. *Shields*, 32 Barb., 374; *Hennig* v. *Fisher*, 1 Sandf., 344; *Brown* v. *McEnry*, 5 N. Y. Leg. Obs., 19.)

*J. S. L'Amoreaux* for the respondent. The deed from Lindsley to the plaintiff was properly received in evidence. (1 Greenl. Evi., § 564; *Wooley* v. *Constant*, 4 J. R., 57; *Penny* v. *Corwithe*, 18 id., 500.) Plaintiff's possession was sufficient to enable him to maintain trespass. (4 Kent, 120; *Phillips* v. *De Groat*, 2 Lans., 192; *Durham* v. *Stuyvesant*, 11 J. R., 633; *Wickham* v. *Freeman*, 12 id., 183; *Gardner* v. *Heart*, 1 N. Y., 520; *Schermerhorn* v. *Buell*, 4 Den., 422; *Dewey* v. *Osborn*, 4 Cow., 338; *Phillips* v. *De Groat*, 2 Lans., 192; *Phillips* v. *Covert*, 7 J. R., 1; *Tobey* v. *Webster*, 3 id., 468; *Holmes* v. *Seeley*, 19 Wend., 507; *Wood* v. *City of Williamsburgh*, 46 Barb., 601; *Rockwell* v. *Saunders*, 19 id., 481; *Smith* v. *Felt*, 50 id., 614; *Morgan* v. *Varick*, 8 Wend.,

594; *Jackson* v. *Hagen,* 2 J. R., 23; *Magie* v. *Baker,* 14 N. Y., 434; *Van Dusen* v. *Young,* 29 Barb., 9, 18; *Rockwell* v. *Saunders,* 19 id., 481.)  Defendant's motion for a nonsuit was properly denied.  (*Batton* v. *McCauly,* 38 Barb., 417; *Haggart* v. *Morgan,* 1 Seld., 427, 428; *Cagillan* v. *Dinsmore,* 35 How., 419; *Magee* v. *Badger,* 34 N. Y., 48; 46 id., 489; *Van Amringe* v. *Barrett,* 8 Bosw., 373, 374; *Pratt* v. *Strong,* 33 How., 288.)

RAPALLO, J.  When this case was before us on the first appeal, two points were decided, viz.:  That the court erred, first, in excluding evidence of the revocation of the power given by the agreement of January 24, 1867, to James Mann, to designate the northern boundary line of the defendant's farm as it existed when James Mann, senior, occupied the farm, and secondly, in excluding evidence offered by the defendant to show where such boundary line was.  As these two erroneous rulings were sufficient to require a reversal of the judgment, the points which arise on the present appeal were not then passed upon by the court.

On the second trial the question of the location of the line, as it existed during Mann's ownership, was submitted to the jury on conflicting evidence, and they found in favor of the plaintiff.

The points mainly relied upon by the appellant on the present appeal are, that at the time of the commission of the alleged trespass the plaintiff was not in possession of the *locus in quo,* and has not been in possession at any time since, but that the defendant was and still is in possession, claiming title thereto.  That the court excluded evidence on that point and also excluded the deeds under which the defendant claimed title, although the offer of such deeds was accompanied by an offer to show that they embraced the *locus in quo.*  These deeds are claimed to be material on the question of possession, and it is also claimed that it appears from them that the boundaries are so definite that there could be no uncertainty about the northern boundary of defendant's farm, and conse-

quently, a parol agreement fixing a different boundary is invalid.

The plaintiff claimed title under a deed to himself from A. E. Lindsley and wife, dated April 1, 1858, conveying a lot of seven acres, the southerly line of the lot, as described in the deed, running east fifteen chains *along the north side of land formerly owned by James Mann*, to the highway. This is the line in dispute, and the northerly line of James Mann's former ownership is the only data by which the plaintiff's southerly line can be located. To locate this line and thus prove his title to the place where the defendant is alleged to have committed the trespass, the plaintiff put in evidence an agreement dated January 24, 1867. The parties to this agreement were the plaintiff and defendant and Jonathan Whiting and James Conner. Whiting had conveyed to defendant the farm formerly owned by Mann, with warranty. Conner owned the farm adjoining defendant's on the west, and there was a litigation pending between defendant and Conner, as to the line between them. The agreement purports to have been made for the purpose of settling this litigation as well as the line between plaintiff and defendant, and provided, so far as this line is concerned, that Whiting should procure a competent surveyor to go upon the land *occupied by the defendant* in this action and make a survey thereof. The land thus to be surveyed is particularly described in the agreement, as a perfectly rectangular piece of forty acres, the courses running due east and west and north and south, the northerly and southerly lines being fifteen chains, and the easterly and westerly lines, twenty-six chains and sixty-seven links in length, bounded on the east by a highway. The southerly line is fixed by reference to marked trees and a stake and stones, and there appears to be no dispute about that line, and nothing but accurate measurement from the south line was required to locate with exactness the boundary line on the north. The agreement then provided that after such survey, James Mann (who was the son of the James Mann who had formerly owned the farm) should go on the land and designate the line between

the present plaintiff and defendant on the north end of defendant's lot, *as the same existed when his father occupied the defendant's lot*, and that so much of the land first described as the line so designated by Mann, should cut or take off therefrom, Whiting should pay defendant for at the rate of thirty dollars per acre. Wood agreed that defendant should have the privilege of removing the fence then standing between his land and defendant's lot on to the line to be designated by Mann, and it was mutually agreed that the boundaries so ascertained by said survey and modified by Mann, as above provided, should be and remain the boundaries of defendant's lot.

This agreement it will be observed shows that there was at the time a fence standing between the lot of the plaintiff and defendant, and that the agreement contemplated the removal of such fence and the cutting off thereby of a portion of the northerly end of defendant's lot, for which he was to receive compensation from Whiting, but conceded at the time of the making of the agreement the entire lot, as described in the agreement, was occupied by the defendant.

The existing fence referred to in the agreement was proved to have been erected by the defendant. The plaintiff testified that it was begun before the agreement, but completed afterwards, and it does not clearly appear in the evidence on the part of the plaintiff whether it was completed before or after the trespass. The plaintiff introduced evidence to the effect that while James Mann owned the lot, he erected a fence across the northerly end, which was about twenty-four links south of the fence subsequently erected by the defendant as before mentioned, and that the remains of this old fence were on the land when defendant erected the new one, and that the old fence was the limit of Mann's occupation. The plaintiff testified that the trespass by felling trees was committed in 1867, after the making of the agreement of January 24, 1867, but before the survey had been made under that agreement. The *locus in quo* was the strip of land twenty-four links wide lying southerly of defendant's new fence.

On or about the 20th of May, 1867, and before action had been taken under the agreement, the defendant by an instrument in writing revoked the agreement that James Mann, the younger, might designate the division line, and all authority given to him to act as arbitrator or otherwise in settling the boundary.   On or about the 20th of August, 1867, Whiting employed a surveyor who professes to have made a survey in accordance with the agreement.   He ascertained the southerly and westerly lines of defendant's lot as therein described, and after having run those lines, Mann pointed out to him the place where there had been an old fence, and he ran the northerly line thus designated by Mann as the line where the old fence had been.   He testified on his cross-examination that the distance from the south line to the north line thus run by him was only twenty-six chains and twenty-four links; that north of this line there was a fence standing, and that the distance between that fence and the line run by him was twenty-four links, and that space was the place where the trees were cut.   He calculated how much was cut off by the line he ran from the land as described in the agreement, and found that at thirty dollars per acre it amounted to nineteen dollars and twenty cents.

The question of fact mainly litigated on the trial was the location of the line where the old fence had stood, the plaintiff and his witnesses alleging that it was where the surveyor had located it, south of the new fence, and the defendant and his witnesses testifying that it was where the new fence was built, but the uncontroverted evidence showed that the new fence was still standing, and the *locus in quo*, twenty-four links wide, was thereby inclosed as part of defendant's lot.   The plaintiff testified that he was in possession of the twenty-four links before the fence was built, and that he had been in possession of the land described in his deed from the time of its delivery to the time of the trial.   The plaintiff proved the tender to the defendant of nineteen dollars and twenty-five cents for the land cut off by the surveyor's line.

At the close of the plaintiff's case the defendant's counsel

moved for a nonsuit, on the ground that the proof showed that the defendant was in the actual and undisputed possession of the land where the trees were cut, and claimed title thereto adverse to the plaintiff and everybody else at the time of the cutting complained of, and that he had continued in such possession from that time to the time of trial, and that plaintiff was not in possession, etc.

At this stage of the case the defendant's possession did not appear so clearly as to justify the court in granting a nonsuit. The plaintiff had testified that before the building of the fence by defendant he was in possession of the *locus in quo;* that at the time of the agreement only a part of this fence had been constructed, and it did not appear that the fence had been completed before the cutting of the trees. The deeds under which the defendant held were not in evidence, and it did not appear that he held the paper title. The extent of his possession was not, therefore, established, nor was there any evidence to locate the southerly line of plaintiff's or the northerly line of defendant's farm, except the evidence introduced by the plaintiff as to the existence of an old fence across the northerly end of the farm when occupied by James Mann. The nonsuit was, therefore, properly denied.

The defendant, however, testified that part of the present fence was built in 1857, when he purchased; that in 1861, he moved it further south, and in June or July, 1866, which was long before the alleged trespass, he built the new fence across the north end of his farm, and that it had remained there ever since; that he then and since claimed that Mann's former occupation had extended to the line of the new fence, and that he had had the exclusive possession of the land thereby inclosed ever since, and that the cutting of trees complained of took place in May, 1867.

If these facts were established they constituted a good defence to the action, and the court at the trial conceded and charged the jury, that if the plaintiff was not in possession at the time of the trespass or since, he could not recover in this action. But as has been shown the facts were disputed, the

plaintiff having testified that the fence was only partly built in 1867, when the agreement was made. The land was covered with wood, and if not fenced in, neither party had the physical, actual occupation of the *locus in quo*. It became material then to inquire who had the paper title, for notwithstanding that it had been agreed by the agreement of January, 1867, that the line existing during Mann's occupation should, when ascertained, be the boundary line between the two farms, and that the defendant should be compensated for any land which might be cut off by such old line, yet until that line was ascertained, he was entitled to possession of the land to which he had the paper title, if the deeds clearly showed the boundaries.

The defendant, therefore, offered in evidence the deeds under which he derived his title, viz. : A deed from Briggs and wife to James Mann, dated in 1815, describing the lands as in the agreement, the northerly line being parallel to the southerly line and twenty-six chains and sixty-seven links northerly therefrom (which description clearly embraced the *locus in quo*, the southerly line not being in dispute). This deed also recited that said premises were at its date in the actual occupation of James Mann. The defendant also offered other deeds showing a chain of title from Mann to him, containing the same description, including a deed from Whiting to defendant, dated October 1st, 1858, and he offered in connection with the deeds to prove that they all embraced the *locus in quo*. The deeds were excluded. He further offered to prove that at the time of the agreement (which was conceded to be before the alleged trespass), he was and ever since had been in the actual and exclusive possession of the premises, claiming title adverse to all parties, and also offered to show his title. All this evidence was excluded, except so far as the evidence offered should tend to show the line between plaintiff's and defendant's land as provided in the agreement. Exceptions were duly taken to these rulings.

We are of opinion that the rulings excepted to were erroneous. The deeds offered in evidence showed that the

defendant had the paper title to the *locus in quo*, and the right to the possession, unless it was barred by adverse possession of the plaintiff and his grantors, or by the agreement of January 24, 1867. They showed that his entry upon the land in 1866, and taking possession thereof by inclosing it within his fences was not tortious, but under a *bona fide* claim of title, and so long as he held such possession, whether his title ultimately proved good or not, he was not liable in an action of trespass for injuries to the land by cutting trees, etc. An owner. out of possession has no right of action for injuries to the land, until after he has recovered the possession. This principle of law was conceded on the trial and in the charge of the judge. The deeds offered bore not only upon the question of title, but also on the question of possession and the offer was not only to prove the title, but actual possession of the land embraced in the deeds at the time of the alleged trespass, and from thence to the time of the. trial. These facts if proved, constituted a complete defence to the action. Even if the original entry had been proved to be tortious, the plaintiff could have recovered in trespass, only for the original entry, and not for the subsequent felling of trees. But the deeds offered tended to show title, and thus justify the original entry.

The agreement of January 24, 1867, was made subsequently to the original entry, provided the jury found that the defendant inclosed the land as he testified, in 1866 ; and even if that agreement should be held to bar him from claiming title according to the description in the deeds, which is, to say the least, very doubtful, the description in the deeds being definite and certain (16 N. Y., 354 ; 32 id., 561 ; 46 id., 204), it did not render the entry in 1866, tortious. If the deeds had been admitted, the plaintiff, in order to show that entry tortious, would have been obliged to prove a previous adverse possession of twenty years. No such question was tried or submitted to the jury. The plaintiff rested his case upon the establishment of a boundary line by practical location, or by agreement. But if he had shown title to the *locus in quo,*

still if the actual possession of the defendant since 1866 had been proved, the plaintiff would not have been entitled to recover damages for felling the trees in 1867. The agreement of 1867 did not change the possession, nor did it retroact and render unlawful what the defendant had previously done. It provided that when the line which had existed during Mann's ownership should be ascertained, as therein provided, that line should be the northern boundary of defendant's lot, and if it cut off any of the land he then occupied, he was to be compensated therefor. This is not inconsistent with a claim on his part that, until this line should be established, he had title to and was entitled to possession of all the land embraced in the deeds. The plaintiff concedes that part, at least, of the fence which inclosed the *locus in quo*, was erected before the agreement, and consequently before the trespass; and if the deeds clearly embraced the *locus in quo*, they bore upon the question of the defendant's possession while the land was unfenced, and on the question of the constructive possession of the plaintiff at the time of the alleged trespass. The line provided for by the agreement of 1867 had not been established at the time of the bringing of this action. The designation of it by James Mann, which governed the surveyor, was made after the revocation of the submission to him, and was consequently of no effect.

We also think that the agreement of 1867 admitted, upon its face, that the defendant was in the occupation of the land therein described which embraced the *locus in quo*. The defendant requested the court so to instruct the jury, and we think the instruction should have been given.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.