BENJAMINE F. EDSALL, Respondent, *v.* JOHN L. HOWELL, Appellant.

*Trees on a highway — measure of damages for their destruction — Laws of* 1863, *chap.* 93; 1890, *chap.* 568, § 181, *considered.*

Chapter 93 of the Laws of 1863, providing that all persons owning lands fronting upon any highway (except in cities and incorporated villages) may make and have sidewalks along such land in the highway, and may plant and have shade trees along the roadside of such sidewalks, was repealed by chapter 568 of the Laws of 1890, section 181 of which latter act, however, declares that the repeal of the act of 1863 should not affect any act done, nor any right acquired under it, prior to the taking effect of the act of 1890, but that the same may be asserted or enforced to the same extent as if the repealing act had not been enacted.

In March, 1867, the owners of the fee of certain lands lying in an unincorporated village and one John L. Howell, then interested in a part of the lands, duly applied to the commissioner of highways of the town to lay out a highway over their lands, and in their application dedicated the lands to the public and released all damages therefor. The highway was duly and legally laid out.

In June, 1867, Benjamin F. Edsall entered into a contract with two of the owners for the purchase of a lot abutting on this highway, and in 1868 he set out trees in the highway in front of his premises.

In 1869 Edsall received a deed of his lot described therein, as "lot No. one, on the corner of Howell and Walnut streets (so called) as laid down and designated on a map," in which no mention was made, either affirmatively or negatively, as to the title to the land in the street in front of his premises. Thereafter John L. Howell, claiming title to the land in the street under conveyances from its former owners, cut down a tree in front of Edsall's premises, and to recover the damages caused by his so doing Edsall brought an action of trespass in which he recovered damages.

*Held,* that the saving clause in the repealing act (Chap. 568 of 1890) was sufficient to protect Edsall as against the public or public officers, and to secure to him as against the public or the public officers the right to the continuance of the growth of the tree;

That the description in the deed to Edsall gave him the ownership to the center of the street in front of his lot;

That the proper measure of damages was the difference between the value of the premises before the tree was cut and their value after the cutting;

That the defendant, if the owner of the fee of the street, would have no right to cut down the tree. (Per MERWIN, J.)

MARTIN, J., dissenting.

APPEAL by the defendant, John L. Howell, from a judgment of the County Court of Tioga county in favor of the plaintiff, entered in the clerk's office of the county of Tioga on the 7th day of March, 1894, upon the verdict of a jury after a trial by the court and a jury, and also from an order entered in said clerk's office on the 10th day of March, 1894, denying the defendant's motion for a new trial made upon the minutes, and also from an order denying his motion for a nonsuit.

This action was brought to recover the damages resulting from an alleged trespass arising out of the cutting of a certain tree on a highway or street in the unincorporated village of Nichols, Tioga county. The defendant claimed title to the fee in the street in front of the plaintiff's premises under two deeds from the former owners, one dated in 1866 and the other in 1892. Upon the trial of the action Howell testified that he did not cut down the tree in question until he had received the deed dated in 1892, which, in its terms, clearly covered the part of the highway in question.

The plaintiff's complaint alleges that the defendant in January, 1893, " was and had been the owner of a certain shade tree, viz., a maple tree, standing in and upon a certain strip of land in the town of Nichols, in the county of Tioga, N. Y., the said strip of land being a public highway of the said town, and the said tree standing in front of certain premises or lands owned by the plaintiff during all the times above referred to, and which said lands and premises were fronting on the said highway. * * * The defendant, without permission or license of plaintiff, the owner, or of any proper officer or person, but willfully, wrongfully and unlawfully, entered in and upon the said highway and in front of the plaintiff's said premises, and then and there willfully, wrongfully, unnecessarily cut, sawed, girdled, despoiled, injured and destroyed the said tree to plaintiff's actual damage of the sum of $65." Defendant

in his answer stated: " That the maple tree mentioned in the plaintiff's complaint is situate upon the border of a highway, the freehold or fee title of which is in defendant, and defendant was seized of the same, and that defendant had reasonable grounds to suppose that he was the owner of, and seized of said maple tree, and whatever defendant did in the premises was done supposing and believing that he was the owner thereof." The deed of the lot to the plaintiff described the land as follows, viz.: " All that tract or parcel of land situate in the town of Nichols in the County aforesaid, known as lot No. one, on the corner of Howell and Walnut streets (so called) as laid down and described in a map and survey made by S. Dexter on the twenty-seventh day of May, 1867, said lot being, according to said map, 132 feet on Howell street by 82½ feet on Walnut street and containing about one-fourth acre of land."

*S. Jay Ohart* and *M. S. Lynch*, for the appellant.

*O. B. Glezen*, for the respondent.

HARDIN, P. J.:

March 30, 1867, John L. Howell, the defendant, made application to the commissioner of highways of the town of Nichols, in writing, to lay out a highway in the town according to a line indicated by a survey and a map, in which application it was stated that the highway " will pass through the improved lands of Peter Joslin, Oliver A. Barstow and John L. Howell, the subscriber." It was stated in the application, viz.: " Each and every one of such owners consenting to the laying out of such highway, and I, the said John L. Howell, do hereby consent to the opening and laying out of said highway in so far as the same crosses over or enters upon the land or any lands owned by me, and I do dedicate to the People of the State of New York the use of so much of my said lands as is included within the bounds of said highway for the purposes of public travel, and I do hereby release to the said People all my claims to damages by reason of the opening or laying out of such highway and authorize the said commissioner to lay out and work the same." Subjoined to that application was the consent signed by Peter Joslin and Oliver A. Barstow, " the ones having the legal title to the lands hereinafter alluded to, and the latter being interested therein as made in a written contract of sale therefor, do

hereby consent to the opening and laying out of the highways which are described and mapped out in the survey and order hereto annexed, in so far as the same crosses over or enters upon any land owned by us or either of us, or in which we or either of us are or is interested, and we do hereby dedicate to the People of the State of New York the use of such portions of our said lands as is included within the bounds of said highway for the purpose of public travel, and we do hereby further release to the People of the State of New York all our and each of our claims to damages by reason of the laying out and opening of such highway, or enters* our said lands by the said order hereto annexed and authorize the commissioner to open and work the same." Upon receiving the several papers so signed, the commissioner of highways made an order that a public highway be "and the same hereby is laid out, pursuant to such application and determination, whereof a survey hath been made;" and in his order particularly described the proposed highway, which order he signed on the 19th day of April, 1867. On the 1st day of June, 1867, Edsall, the plaintiff, entered into a contract with C. R. Barstow and O. A. Barstow to purchase of them "all that lot of land in the village of Nichols, known as lot No. one, on the corner of Howell & Walnut streets (so called), as laid down and described in a map and survey made by S. Dexter on the 27th of May, 1867, said lot being according to said map 132 feet on Howell street by 82½ feet on Walnut street, and containing about ¼ acres of land." In pursuance of that contract Edsall, the plaintiff, on the 16th day of February, 1869, took a deed of the premises from the Barstows, in which deed the lands acquired by the plaintiff were described as follows : " All that tract or parcel of land situate in the town of Nichols in the county aforesaid, known as lot No. one, on the corner of Howell and Walnut streets (so called), as laid down and described in a map and survey made by S. Dexter on the twenty-seventh day of May, 1867, said lot being, according to said map, 132 feet on Howell street by 82½ feet on Walnut street, and containing about one-fourth acre of land." The plaintiff went into possession of the land so purchased after receiving the contract and continued in possession down to the time of the trial. In 1868, in front of his premises, he set out some maple trees, and the most

---

* So in original.

easterly tree was the one which the defendant cut. . It was about a foot west of the plaintiff's east line, if the east line of his lot be continued to the center of the street.

Chapter 93 of the Laws of 1863 provided, viz.: "All persons owning lands fronting upon any highway (except in cities and incorporated villages) may make and have sidewalks along such land in the highway and plant and have shade trees along the roadside of such sidewalks; such sidewalks with shade trees shall not extend more than six feet in width from the outward line of such highway; provided such highway is not over three rods wide, with the right to add one additional foot in width to such sidewalk for every additional rod in width of such highway where such sidewalks may or shall be built or shade trees planted, and for the protection of such walks or trees may also construct a railing upon the roadside adjacent and within two and a half feet of such trees or walks, of not more than one bar in height with posts, and also protectives at the ends in such way or manner as not to prevent foot passengers from using such walks, but so built as may and shall prevent cattle from going thereon." While that law was in force, to wit, in 1868, the plaintiff set out the tree in question. Although chapter 93 of the Laws of 1863 was repealed by chapter 568 of the Laws of 1890, relating to highways, section 181 of the act of 1890 contained a saving clause in the following language: "The repeal of a law, or any part of it specified in the annexed schedule, shall not affect or impair any act done, or right accruing, accrued or acquired, or penalty, forfeiture or punishment incurred prior to the time when this act takes effect, under or by virtue of the laws so repealed, but the same may be asserted, enforced, prosecuted or inflicted as fully and to the same extent as if such laws had not been repealed." So far as the public easement or the public use of the highway was concerned the statute of 1863 operated as against the public to authorize the plaintiff to plant the tree in question, and we are inclined to think the saving clause found in the statute of 1890 was sufficient to protect him as against the public or public officers and to secure to him as against the public or the public officers the right to the continuance of the growth of the tree. Considering the contract which he made when he purchased the lot and the deed which he subsequently received therefor and the

description therein found, we are inclined to think that the rule of law obtained that gave him the ownership to the center of the street, subject, however, to the public easement. (*Village of Lancaster* v. *Richardson*, 4 Lans. 136; *Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y. 61; *Wiggins* v. *McCleary*, 49 id. 346.)

In *Hennessy* v. *Murdock* (137 N. Y. 323) it was said: "The use of the fee of the bed of the street is so inseparably connected with the ordinary use of the adjacent lot that a severance of the two will not be deemed to have been effected unless the presumption that the grantor intended to pass title to the centre of the street is rebutted by other parts of the deed and by the condition and relation of the parties to the lands conveyed and other lands in the vicinity." That case cites with approval *Mott* v. *Mott* (68 N. Y. 246).

(2) We are of the opinion that the complaint sufficiently set out the ownership of the tree in question, and that the defendant willfully, wrongfully and unlawfully " cut, sawed, girdled, despoiled, injured and destroyed the said tree; " and that the evidence given under the complaint tended to support the allegation. The plaintiff testified that he set the tree out in the spring of 1868 in front of his lot, and that it has " stood there ever since." He testified that his lot was worth before the tree was cut $1,500 and that immediately after the tree was cut it was worth $1,425, and he added that he was of the opinion that it depreciated the value of his lot $75. The witness Merrill testified that it always was a thrifty tree and that there were no dead limbs in it before it was cut, and that he was acquainted with the value of the real estate, and then, against the defendant's objection, he was permitted to state the value of the house and lot as it stood previous to the cutting of the tree and the value of it afterwards, making, according to his opinion, a difference of $50. We think no error was committed in receiving the evidence. (*McCruden* v. *Rochester Railway Co.*, 5 Misc. Rep. 64; *Evans* v. *Keystone Gas Co.*, 72 Hun, 503; 54 N. Y. St. Repr. 861.)

The question of damages was alluded to by this court in delivering the opinion in *Nixon* v. *Stillwell* (52 Hun, 353), and that case seems to be referred to with approbation in *Dwight* v. *E., C. & N. R. R. Co.* (132 N. Y. 203). Since these cases were determined the

question has been considered in *Hartshorn* v. *Chaddock* (135 N. Y. 122). Applying the rule stated in the case just cited to the case in hand, we are of the opinion that we ought not to disturb the verdict on the question of damages.

The case of *Wood* v. *Lafayette* (68 N. Y. 181) is quite unlike the case before us and does not aid the contention of the appellant. We see nothing in *Robert* v. *Sadler* (104 N. Y. 229) justifying the act of the defendant in despoiling the tree of the plaintiff standing adjacent to his premises.

The judgment and order should be affirmed, with costs.

MERWIN, J. :

The point relied on by defendant is that he was the owner of the fee, and, therefore, had the right to cut down the tree. Does the conclusion follow from the premise? The law of 1863 was in force at the time the defendant, and those from whom he holds, petitioned for the highway and released their damages. Presumptively they knew that, as the law then stood, an adjoining owner had the right to have sidewalks and plant shade trees on the side of the street. The dedication and release are presumed to have been made in view of this right and co-extensive with the use to which such highway might by law be devoted. (*Griffin* v. *Martin*, 7 Barb. 297; *Hardenburgh* v. *Lockwood*, 25 id. 9.) The setting out of trees along the side of a highway has from time immemorial been recognized as a proper use of a highway. (2 R. L. of 1813, chap. 33, § 29, p. 279; R. S. vol. 2 [8th ed.] 1398, § 127.) The right given by the law of 1863 is not, I think, limited to those adjoining owners who own the fee. The language of that act is general, and its plain object would not be attained by limiting its effect to one class of owners. The right to plant shade trees goes with the right to have sidewalks. I am of the opinion that the defendant, although the owner of the fee, had no right to cut down the tree. I, therefore, vote for affirmance.

MARTIN, J. (dissenting) :

This case was tried and submitted to the jury upon the theory that the defendant was the owner in fee of the land upon which the tree in question stood. When the case is examined upon that theory, the only question which bears upon the plaintiff's right to

maintain this action is whether he could recover for cutting the tree upon lands to which the defendant had the title, although it was in the highway in front of the plaintiff's premises.

At common law the owner of the fee over which a highway is laid has all the usual rights and remedies of the owner of a freehold, and as such has the exclusive right to the soil and its productions, including the herbage and trees, subject only to the easement or right of passage over it by the public and the incidental right of properly fitting the way for use. (Elliott on Roads & Streets, 519, and cases cited; *Bliss* v. *Johnson*, 73 N. Y. 529, 533.) Hence, it is manifest that the plaintiff had no right to plant the tree in question upon the defendant's land or to maintain it there without his consent unless there is some statute which has conferred that right.

The only statute which it is claimed or pretended has any application in this case is chapter 93 of the Laws of 1863, which provided: "All persons owning lands fronting upon any highway (except in cities and incorporated villages) may make and have sidewalks along such land in the highway and plant and have shade trees along the roadside of such sidewalks."

It was in effect held by the court below that this statute conferred upon the plaintiff the right to plant trees upon the land of the defendant in the public highway upon which the plaintiff's lands fronted, and that he so far became the owner of the tree and entitled to the use of the defendant's land to maintain it as to make him a trespasser in cutting it. If this be true, I can see no reason why the same rule would not apply to any case where the statute has provided that the highway may be used for other than highway purposes, including telegraph and telephone lines and street and steam railways. The weight of authority, however, is to the effect that where the fee is in an abutting owner the appropriation of a street for the use of a steam railway is a new and additional burden for which the abutter is entitled to compensation. (*Williams* v. *N. Y. Central R. R. Co.*, 16 N. Y. 97; *Mahon* v. *N. Y. Central R. R. Co.*, 24 id. 658; *Henderson* v. *N. Y. Central R. R. Co.*, 78 id. 432.) The same principle is applicable in case of a horse railroad (*Craig* v. *Rochester City & Brighton R. R. Co.*, 39 N. Y. 404); and to the setting of poles in the street upon the land of

an abutting owner by a telephone or telegraph company (*Dusenbury* v. *Mutual Telegraph Co.*, 11 Abb. N. C. 440; *Metropolitan Telephone, etc., Co.* v. *Colwell Lead Co.*, 67 How. Pr. 365; *Johnson* v. *Thomson-Houston Electric Co.*, 54 Hun, 469; *Board of Trade Telegraph Co.* v. *Barnett*, 107 Ill. 507; *Smith* v. *Central, etc., Tel. Co.*, 2 Ohio Circ. Ct. 259; *Willis* v. *Erie Telegraph & Telephone Co.*, 37 Minn. 347); so, too, neither public officers, nor individuals other than the owner, can remove or disturb the soil in the highway, except so far as is necessary for its construction or repair. (*Robert* v. *Sadler*, 104 N. Y. 229.)

The statute of 1863 was simply permissive, and was not intended to interfere with or change the property rights of individuals as between themselves. I am of the opinion that a proper construction of this statute requires us to hold that its purpose was to give the abutting owners the right to plant trees upon highways where the title to the land was in them, or, perhaps, where the title was in the public, and that it ought not to be construed as vesting authority in the owner of abutting land to appropriate the adjoining land of his neighbor to his own use for that purpose. That construction is consistent with the rights of all parties, while an opposite one would be inconsistent with the rights of a land owner and render the constitutionality of the statute doubtful. Such a construction should not obtain. The presumption is that the Legislature did not intend to violate the Constitution, and the statute should be so construed as to uphold its validity and maintain the common-law rights of the defendant. Nor can I concur in the conclusion that this court should assume that the plaintiff had title to the land to the center of the highway upon the theory that the law presumes that the conveyance to the plaintiff passed the title to the center because it was bounded· by the highway. It was practically conceded upon the argument as well as upon the trial that the title to the land was in the defendant. The respondent does not dispute this proposition. If there had been any contest over this question it may well be that the defendant would have proved that the condition and relations of the parties and the situation of the land were such as to completely repel and overcome such presumption. The evidence fails to show that the plaintiff's grantors ever had any title to or interest in the land over which this portion of the highway was

laid.    If his grantors had no title it is difficult to imagine how the defendant's title could be divested by such a presumption when the conveyance was between other parties who had no title whatever to the land in question.

The question whether the title passes to the center where lands conveyed are bounded by a highway is one of intent, and the intent is to be gathered from the description of the premises in connection with other parts of the grant and by reference to the situation of the land and the condition and relations of the parties to the land conveyed and other lands in the vicinity.    (*Mott* v. *Mott*, 68 N. Y. 246.) Moreover, this presumption has no existence where the grantor is not the owner of the fee of the land in the highway.    (2 Devlin on Deeds, § 1024).

I am of the opinion that the court erred in charging the jury that the defendant was liable although the owner of the land (*Village of Lancaster* v. *Richardson*, 4 Lans. 136), and that for such error the judgment should be reversed.

Judgment and order affirmed, with costs.