Thomas Donahue, Respondent, v. Keystone Gas Company, Appellant.

Negligence — Easement of Abutting Owner in Shade Trees Growing in Street — Liability of Gas Company for Their Destruction by Escaping Gas. An owner of residential property abutting upon a city street, but owning no part of the bed thereof, on the margin of which and directly in front of his premises, but not upon his land, are a number of maple trees, planted by his predecessor in title, about thirty-five years old, "all in thrifty condition and furnishing good shade," has a property right therein sufficient to entitle him to recover the damages caused to his premises by the destruction of the trees by the negligence of a gas company, in permitting, after notice, gas to escape from its pipes into the soil about the roots of the trees; as an abutting owner he has a right therein in the nature of an easement attached to and forming part of his premises, similar to his easements of light, air and access and other easements, which spring from the situation of his land upon the open space of the street, which exists whether he owns the fee of the street or not; and even if the city, owning the street, has a right of action for the destruction of the trees, this cannot constitute a double recovery for the same injury, because the damages are as distinct and clear as the causes of action themselves; one involves the general rights of the city, the other is limited to the special rights of the abutting owner.

*Donahue* v. *Keystone Gas Co.*, 90 App. Div. 386, affirmed.

(Argued March 13, 1905; decided April 25, 1905.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 15, 1904, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*J. H. Waring* for appellant. The plaintiff had no property in the trees in question. (*Green* v. *Armstrong*, 1 Den. 550; *Goodyear* v. *Vosburg*, 57 Barb. 245; *Mott* v. *Palmer*, 1 N. Y. 564; *L. F. Co.* v. *L. F. G. Co.*, 82 N. Y. 476; *Killmore* v. *Howlett*, 48 N. Y. 565; *Pierpont* v. *Bernard*, 6 N. Y. 279; *McGregor* v. *Brown*, 10 N. Y. 114; *Woodhull*

v. *Rosenthal*, 66 N. Y. 383 ; *Armstrong* v. *Du Bois*, 90 N. Y. 95 ; *Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 123.) If the gas escaped through defendant's negligence, as the jury found, that does not make it liable to the plaintiff. (*Hay* v. *Cohoes Co.*, 2 N. Y. 159 ; *Radcliff* v. *Brooklyn*, 4 N. Y. 195 ; *Campbell* v. *Seaman*, 63 N. Y. 568 ; *Sullivan* v. *Dunham*, 161 N. Y. 290 ; *Huffmire* v. *City of Brooklyn*, 162 N. Y. 584 ; *Clark* v. *Foot*, 8 Johns. 421 ; *Gardiner* v. *Village*, 2 Johns. Ch. 162 ; *Phelps* v. *Nowlen*, 72 N. Y. 39 ; *Rideout* v. *Knox*, 148 Mass. 368 ; *Knapp* v. *Roche*, 94 N. Y. 329.)

*W. D. Parker* for respondent. The rights of free passage along the sidewalk and roadway and to the enjoyment of the shade trees, and the property value augmented by them, were perpetual appurtenances to the land adjoining. (*Holloway* v. *Southmayd*, 139 N. Y. 390 ; *Haight* v. *Littlefield*, 147 N. Y. 338 ; *Archibald* v. *N. Y. C. & H. R. R. R. Co.*, 157 N. Y. 574 ; *Mattes* v. *Frankel*, 157 N. Y. 603 ; *Payne* v. *Chandler*, 134 N. Y. 385 ; *Spencer* v. *Kellmer*, 151 N. Y. 398 ; *Newman* v. *Nellis*, 97 N. Y. 285 ; *Gorham* v. *E. C. E. Co.*, 29 N. Y. Supp. 1904 ; *Edsall* v. *Howell*, 33 N. Y. Supp. 893.)

Vann, J. The plaintiff has the rights of an abutting owner upon the west side of a public highway known as Union street, in the city of Olean, but he owns no part of the bed of the street. The defendant is a foreign corporation which supplies natural gas to the inhabitants of the city for light and fuel by means of pipes laid beneath the surface of the streets in the usual way. There are two dwelling houses on the premises of the plaintiff, one of which he occupies as a residence while the other is leased to a tenant. In 1898, near the west margin of Union street and directly in front of the plaintiff's premises but not upon his land, there were five maple trees about thirty-five years old, " all in thrifty condition and furnishing good shade." These trees stood twenty-five feet from the

front line of the plaintiff's houses and made them attractive to purchasers and tenants. About 1900, as the jury found upon sufficient evidence, four of these trees were destroyed by the negligence of the defendant in permitting gas to escape from its pipes into the soil about the roots of the trees. This action was brought to recover the damages alleged to have been sustained by the plaintiff by reason of these facts, and the jury found a verdict in his favor for the sum of $150. Upon appeal to the Appellate Division the judgment entered upon the verdict was unanimously affirmed, one of the judges concurring in the result only.

Upon the trial the court charged, among other things, as follows: "For the purposes of the disposition of this case I charge you as a matter of law that the plaintiff had a property right in those trees, although they were not planted upon lands that he had the title to, sufficient to permit him as a matter of law to maintain an action against any person who might wrongfully injure or destroy the same." The exception taken to this ruling presents the main question that we are called upon to decide.

The defendant claims that the plaintiff had no legal or equitable interest in the trees, because he did not own the land upon which they stood and that, hence, he sustained no injury by reason of their destruction. The plaintiff claims that, as an abutting owner, he had a right in the trees in the nature of an easement attached to and forming a part of his premises, and that he was entitled to recover the damages caused to his land by the loss of the trees through the wrongful act of the defendant. An interesting and important question is thus presented, upon which there is but little direct authority, although the courts have labored long to settle the principles of law governing the rights of those owning land upon a public street where the fee is in the municipal government.

The maintenance of trees in a street for the purpose of ornament and shade is a proper street use, sanctioned both by statute and the custom of the country. (*Edsall* v. *Howell*, 86 Hun, 424; *Cross* v. *Mayor, etc.*, 18 N. J. Eq. 305, 313; 2 R. L.

of 1813, ch. 23, § 29 ; 2 R. S. 1898, § 127 [8th ed.] ; L. 1863, ch. 93 ; L. 1875, ch. 215 ; L. 1881, ch. 344 ; L. 1890, ch. 568, §§ 43, 44.) The trees thus maintained are a part of the street, to be enjoyed and used by the public traveling thereon the same as a good roadbed, sidewalk, pavement or anything else in the street which contributes to the comfort or pleasure of the traveler. As a general rule whatever renders a street more valuable to the people at large renders it more valuable to the abutting owner, for he has all their rights of user, besides other rights which are peculiar to himself. While the control of the street, regardless of where the title may be, of necessity is in the public authorities, and they may grade and improve it even to his detriment, still he has special rights therein, which are a species of property that cannot be taken from him without compensation awarded according to the law of the land. (*Story* v. *N. Y. Elev. R. R. Co.*, 90 N. Y. 122, 179.)

Among his rights are those of light, air and access, each long resisted, but now well established as safe from the onslaught of wrongdoers, even including those who erect an elevated railroad in a street with the sanction of law. (*Lahr* v. *Metr. Elev. Ry. Co.*, 104 N. Y. 268 ; *Abendroth* v. *Manhattan Ry. Co.*, 122 N. Y. 1 ; *Kane* v. *N. Y. Elev. R. R. Co.*, 125 N. Y. 164.) But during the long struggle which saved these rights of the abutting owner, he did not always win, for the necessary annoyance caused by a use of the street authorized by law, such as the noise of a train passing on an elevated railway, gives him no right to permanent damages, unless some part of his land is taken. (*American Bank Note Co.* v. *N. Y. Elev. R. R. Co.*, 129 N. Y. 252.) This was so held upon the ground that where the use is authorized and is for the benefit of the public, he must endure the discomfort incidental to a lawful use and essential to the public welfare. But whatever pollutes the air he breathes, such as smoke and gas, shuts the light from his windows or hinders access to his door, such as an elevated railroad structure and the trains thereon, must be reckoned for, even by the technical wrong-

doer acting with some sanction but not the full sanction of law. In settling the law to this extent, general expressions have sometimes been used by the court, indicating as its opinion that these easements of light, air and access are the only rights which an abutting owner has in a public street of which he owns no part. Courts settle the law by passing upon actual questions, not by advancing abstract theories, and the words of exclusion should be limited to the facts of the case in hand when they were used, as was doubtless the intention.

It is to be observed that we are not dealing with a question arising between an abutting owner and the city authorities, for in such a case the rights of the latter are paramount, so long as the road is kept open and unobstructed. Nor are we dealing with a question between him and a corporation authorized to use the streets for some public purpose, where it becomes necessary to cut shade trees in order to effect that purpose. It is not the question which might have arisen when the defendant many years ago laid its pipes in the street, if it had then been necessary to cut the trees which are the subject of this action in order to do the work properly and they had been cut for that purpose with the approval of the city authorities. The defendant did not let its gas escape with the consent of the officers in control of the street. It did not act in accordance with law, but in violation of law. It was not a semi-wrongdoer as were the elevated railroad companies, but an absolute wrongdoer. It was a naked trespasser and its act was a nuisance which inflicted special injury upon private property, for it reduced the value of the plaintiff's premises by the sum of $150, as the jury found. Every one has a right to use a public street, but no one has a right to stand in front of another's residence and play a hurdy gurdy or fog horn hour after hour and day after day to the annoyance of the owner and his family. That would be a trespass, even if the offender did not touch the property of the abutting owner, whose right to damages could not be questioned. If a mere trespasser should maliciously cut shade trees standing in a street, the fee of which was in the city, could the abutting

owner recover damages? That is in substance the question before us, for while the defendant did not act wilfully in destroying the trees it acted negligently, after due warning and was a simple wrongdoer.

The defendant insists with great persistence that it did not injure the plaintiff, because it did not touch his premises or throw anything upon them. Interference with access or with light does not necessarily involve contact with tangible property, yet either is a trespass upon a property right. Why should the law protect the air of an abutting owner from the smoke of a semi-trespasser and not protect the coolness of the air from injury by an absolute trespasser? If the air is better in the one case, it is in the other, for the difference is in degree only. Upon what principle can pure air be called a property right and cool air no right at all?

What is the principle upon which interference with light, air and access is made the subject of damages and sometimes of an injunction? Why do courts hold that these rights are property? What is their origin and nature? Why does the abutting owner have rights in the street which do not belong to the general public? These questions were asked in substance in the first case which recognized the existence of the rights and they were answered for the purpose of that case as follows: " Generally, it may be said, it is to have the street kept open, so that from it access may be had to the lot, and light and air furnished across the open way. * * * This right or privilege constitutes *an easement in the bed of the street*, which attaches to the abutting property of the plaintiff and constitutes private property within the meaning of the Constitution, of which he cannot be deprived without compensation." (*Story* v. *N. Y. Elev. R. R. Co.*, 90 N. Y. 122, 146, 179.)

In a later case, Judge ANDREWS, speaking of the right, said : " But however difficult it is to trace its origin or refer it to any exact legal principle, it is undoubtedly the prevailing doctrine of American jurisprudence that the owner of a lot abutting on a city street, the fee of which is in the municipal-

ity, has, *by virtue of proximity*, special and peculiar rights, facilities and franchises in the street, not common to citizens at large, in the nature of easements therein, constituting property of which he cannot be deprived by the legislature or municipality or by both combined without compensation." (*Kane* v. *N. Y. Elev. R. R. Co.*, 125 N. Y. 164, 180.) In *Bohm* v. *Metr. Elev. Ry. Co.* (129 N. Y. 576, 587), Judge PECKHAM stated that "although the land itself was not taken, yet the abutting owner *by reason of his situation*, had a kind of property in the public street for the purpose of giving to such land facilities of light, of air and of access from such street."

So a learned commentator, citing authorities from various states to support his position, has laid down the following proposition : "An owner whose land abuts upon a highway necessarily enjoys certain advantages from the existence of an open street adjoining his property, which belong to him by reason of *the location of the street* and are not enjoyed by the general public  *  *  *." (Jones on Easements, § 489.)

The easement, as for convenience it may be called, consists in the right to have the street kept open and includes all the incidental privileges which may fairly be implied from that right.  It is the proximity of the street, the situation of the abutting land with reference to an open street, which gives to the abutting owner the special right to the enjoyment and use of whatever is permitted or maintained by the public authorities as a part of the street.  These easements are created by operation of law when streets are opened and they are presumed to be paid for by taking the benefits into account when land is procured for the purpose.  Such benefits are "coextensive with the use" to which the street may by law be devoted. (*Edsall* v. *Howell*, 86 Hun, 424, 430 ; *Hardenburgh* v. *Lockwood*, 25 Barb. 9 ; *Griffin* v. *Martin*, 7 Barb. 297 ; *Village of Lancaster* v. *Richardson*, 4 Lans. 136, 140.) They frequently induce owners of land to donate or dedicate a part thereof for the purpose of a street.  If the street is improved so as to be more useful, or ornamented so as to be more beautiful, the public is benefited generally and the abutter

is benefited specially. So long as a hitching post or a shade tree is physically and legally a part of the street, he is entitled to all the special benefits which flow therefrom to his lot, free from interference by a wrongdoer, but subject to removal by the municipal government. The easement extends to all parts of the street which enlarge the use and increase the value of the adjacent lot. It is not limited to light, air and access, but includes all the advantages which spring from the situation of the abutter's land upon the open space of the street. These rights exist whether he owns the fee of the street or not. As they are dependent upon the street and cannot exist without it, they are a part of it and thus become "an integral part of the estate" of the abutting owner, subject to interference by no one except the representatives of the public.

No adequate reason is given for the attempt to limit the easement to light, air and access. What distinction in principle is there between these benefits, which are incidental to a street, and any other incidental advantage which adds to the value of abutting land? Why should the law extend protection to the one and withhold it from the other? Is any danger to be apprehended from the practical working of a rule to protect shade trees in our streets from destruction by the careless or malicious? If an enemy wantonly cuts down trees standing in the street in front of his neighbor's lot, have the courts no power to redress the wrong done to private property? The shade trees of our cities and villages are the pride of the people. On many streets they add largely to the commercial value of land. Is the law so tender toward wrong-doers as to virtually say to them, "If you cut down every graceful elm or beautiful maple standing in the streets of any city and can adjust matters with the authorities, you are safe, for no individual can call you to account, even if twenty per cent is taken from the value of his property?" The announcement of such a rule, directly or indirectly, would spread consternation throughout the state.

If the plaintiff had owned to the center of the highway, his right to recover damages would be beyond question, yet the

difference between such an action and the one before us is theoretical rather than practical, because as long as the street is kept open, which is the invariable rule in cities and the general rule elsewhere, the abutting owner has substantially the same benefit in either case. (*Halleran* v. *Bell Telephone Co.*, 177 N. Y. 533; 64 App. Div. 41; *Eels* v. *American Telephone & Tel. Co.*, 143 N. Y. 133; *Edsall* v. *Howell*, 86 Hun, 424; *McCruden* v. *Rochester Railway Co.*, 151 N. Y. 623; 77 Hun, 609; 5 Misc. 59; *Gorham* v. *Eastchester Electric Co.*, 80 Hun, 290; 2 Dillon on Mun. Corp. § 644a, 4th ed.) Is it better to limit the recovery to cases founded upon a mere technicality, or to extend it to all where substantial injury is inflicted upon the abutting owner by the act of a wrongdoer in a public street? Which rule is better adapted to the needs of the people generally throughout the state? Which will promote justice in the greater number of cases? What is there to prevent the court from laying down the best practicable rule to restrain wrongdoers from cutting down shade trees standing in the street in front of people's homes? These questions were answered in a practical and, as we think, a correct way in a recent case decided by the Appellate Division of the second department, which held that "an owner of land abutting upon a city street whose ownership does not extend to the middle of the street, who has set out ornamental shade trees on the sidewalk in front of his premises at his own expense and with the sanction of the municipal authorities, is entitled to have such trees protected against negligent or willful destruction at the hands of third parties. He has a right in such trees in the nature of an equitable easement, and where one of them is girdled and destroyed by a horse, may recover from the owner of the horse the damages thus sustained." (*Lane* v. *Lamke*, 53 App. Div. 395.) This is the only case brought to our attention that is directly analogous and we think it is founded upon sound legal principles which should be applied to the case before us. While the plaintiff did not set out the trees in question, he is entitled to the rights of his predecessor in title as an abutting owner who did set

them out, and as they have stood so long in the street they are presumed to have been placed and maintained there with the consent of the municipal authorities. Even if the city of Olean has a right of action against the defendant, there can be no double recovery for the same injury because the damages in the two classes of actions are as clear and distinct as the causes of action themselves. The one involves the general rights of the city, while the other is limited to the injury to the special rights of the abutting owner. The wrongdoer cannot complain if he is made to pay for all the property he destroyed, even if part belonged to the plaintiff and part to the city.

We think that the charge of the learned trial justice that the plaintiff had a property right in the trees in question sufficient to enable him to maintain this action was correct. As no other question requires consideration the judgment appealed from should be affirmed, with costs.

BARTLETT, HAIGHT and WERNER, JJ., concur; CULLEN, Ch. J., GRAY and O'BRIEN, JJ., dissent.

Judgment affirmed.