## SUPREME COURT.

### C. COLES DUSENBURY agt. THE MUTUAL UNION TELEGRAPH COMPANY.

*Telegraph companies — No right to set their poles in front of persons' lands or residence without making compensation therefor — An action may be maintained for their removal — Ejectment.*

An action of ejectment may be maintained by the owner of lands against a telegraph company for the removal of poles which have been set by such company on the side of the road in front of the plaintiff's lands and residence without first having made compensation.

Under the act of 1853 (*Laws of* 1853, *chap.* 471), amending the act of 1848, providing for the incorporation and regulation of telegraph companies, such companies cannot enter upon and use lands (which includes public roads, streets and highways) without first compensating the owner or owners thereof. It must make payment precede appropriation.

*Special Term, December,* 1882.

DYKMAN, *J.*—The defendant in this action has set telegraph poles on the side of the road in front of the plaintiff's lands and residence, in the village of White Plains, without making compensation, and this action is for their removal. It is undisputed that the plaintiff owns the lands thus occupied, subject only to the highway easement, which between him and the defendant, leaves his ownership complete and exclusive. Nor is it contended that ejectment is an improper remedy to rid the highway of extra burdens wrongfully imposed.

The defense is, that there is a statute of this state authorizing such occupation as defendant has made, and that the plaintiff is, by the terms of such statute, limited to one single remedy. The defendant urges that it is authorized to occupy the highway in question without compensating the fee owner, and that the latter must set in motion the judicial machinery provided to measure the compensation to be made and await its slow motion.

Dusenbury agt. Mutual Union Telegraph Company.

Careful study of principle and authority will show that, under the constitution of this state, no such right as the defendant claims could be given it, and that the statute invoked does not attempt to confer any such authority.

There are two great classes of corporations, public and private. Public corporations are created for purposes of government, and as applied to corporations the term public is synonymous with municipal. Private corporations are created for commercial purposes. They are sometimes made agents of the state, and by inconsiderate talking and writing they are sometimes called public, but their nature remains the same; they are trading corporations.

It is too late to question the power of the state itself to appropriate the property of its citizens for public purposes and defer payment, and the principle has been extended to corporations created for purposes of local government. But the reason of the exercise of power is the undoubted responsibility of the state and municipality to compensate the owner.

The gulf between governmental corporations and commercial companies is nowhere wider than at the question of eminent domain, and the gulf is not bridged by the courts clothing the latter with a public character to enable them to exercise the right of eminent domain.

The text writers agree that these private companies ought to be required to pay before they appropriate. Mr. Cooley, in his Constitutional Limitations (*page* 702), says : " Where, however, the property is not taken by the state or by a municipality, but by a private corporation which, though for this purpose to be regarded as a public agent, appropriates it for the benefit and profit of its members, and which may or may not be sufficiently responsible to make secure and certain the payment in all cases of the compensation which shall be assessed, it is certainly proper, and it has sometimes been questioned whether it was not absolutely essential that payment be actually made before the owner could be divested of his freehold." Chancellor KENT (2 *Com.*, 339) has expressed

the opinion that compensation and appropriation should be concurrent. The settled and fundamental doctrine is that government has no right to take private property for public purposes without giving just compensation, and it seems to be necessarily implied that the indemnity should, in cases which will admit of it, be previously and equitably ascertained, and be ready for reception, concurrently in point of time, with the actual exercises of the right of eminent domain.

While this is not an inflexible rule, unless in terms established by the constitution, it is yet so just and reasonable that statutory provisions for taking private property very generally makes payment precede or accompany the appropriation, and by several of the state constitutions this is expressly required. On general principles it is essential that a fund be provided, which the owner of the property can certainly obtain. It is not competent to deprive him of his property and turn him over to an action at law against a corporation, which may or may not prove responsible, and to a judgment of uncertain efficacy." The contrary construction shocks the sense of natural justice, and a party against whom it is urged has a right to demand that the position be abundantly fortified by authority. The defendant here presents but one isolated authority, and that fails to meet this case.

In *Calkin* agt. *Baldwin* (4 *Wend.*, 688) an act was construed which permitted the defendant to improve the navigation of a public river, declared to be a public highway. The provision for compensation was very like that of the act under consideration. So far as the case goes it makes for the defendant; but there is a distinction between improving a highway, the sole use of which is public, and stretching wire over it for a private company. They are not parallel cases. Every other case cited by the defendant was that of a governmental corporation taking lands, and as we have seen it does not follow that because such public corporations may take possession before payment that a private corporation may do the same.

*Bloodgood* agt. *The Mohawk and Hudson Company* (18 *Wend.*, 1) is often quoted as authority for the defendant's contention, and is relied on now.

The action was trespass, *quare clausum fregit.* The defendant justified under its act of incorporation. That act gave it authority to take possession of and use all such lands and real estate as should be indispensable  *  *  *  provided compensation be made. The supreme court gave judgment for the defendant, but the court of errors reversed the judgment and held that compensation under the defendant's charter was a condition precedent to the right of entry.

Chancellor WALWORTH, writing for reversal, concludes as follows: " The conclusion at which I have arrived, therefore, is that the defendants' plea is imperfect in not averring that the damages had been regularly assessed and paid before defendant entered upon the plaintiff's land and appropriated it to the use of their road."

The conclusion of senator EDWARDS is still stronger against the assumed right.

Senator MAISON said: " *When* the compensation is to be made may perhaps be a matter of doubt, whether before the property is taken and used or afterwards; it must either be paid before the property is taken or within a reasonable time thereafter, and the making of this compensation must be as absolutely certain as that the property is taken; it must not be dependent on any hazard, casualty or contingency, whatever. The language of the constitution is explicit and unambiguous. 'Probate property *shall not be taken* for public use without just compensation.  *  *  *  Compensation, according to my understanding, is to be made before the property be taken, or indulging in great liberality of construction, the property may be taken on there being an ample and absolute provision made for positive, certain payment, without subjecting the citizen to hazard, contingency, litigation or imploration.  *  *  *  As, however, no certain payment at a future day is provided, we must construe this law,

in order to sustain its constitutionality, as suggested. The payment must precede the use.' "

Senator TRACY, concurring with the chancellor and senators EDWARDS and MASON, concludes in a very able and interesting opinion, as follows: " I conclude, therefore, that in the present case, where there was no public fund, which in law and in fact must be deemed always adequate to insure the payment of such damages as shall be found to have accrued, that the legislature could not authorize the defendants to enter upon and possess and use the lands belonging to the plaintiff until they had first paid or offered to pay him a just compensation therefor." A resolution passed the court embodying the views expressed in these quotations, and judgment was entered against the company.

The legislature, at its last session, provided for elevated railroads taking possession before making compensation, but it provided, also, for the ascertainment, deposit and final distribution of an indemnity fund. (*Laws of* 1882, *chap.* 393.)

The acts under which the defendant justifies contains no provision for an indemnity fund, and leaves compensation contingent upon the defendant's financial solvency; and that failing, the land owner must, to rid himself of these poles and wires, have the vexation and expense of a law suit.

The act of 1853 so amended the law of 1848 as to resolve any doubts that might be entertained as to the legislative purpose. The act of 1848 made payment a condition subsequent, and did not provide a fund from which to compensate the land owner. Therefore, within the principle of Bloodgood's case, it was unconstitutional. The act of 1853 amends it. The right to enter upon and use lands is declared to be subject to the fee owner's right to compensation, and either party is authorized to institute the proceedings.

The condition is contained in the words, " subject to the right of the owner or owners thereof to full compensation for the same (*Laws of* 1853, *chap.* 471, *sec.* 2). It is to be construed as follows: First. It is a condition precedent.

Dusenbury agt. Mutual Union Telegraph Company.

Second. It applies to the public roads, streets and highways," and also to " any other land which the company is authorized to occupy."

Other reasons for this construction are, that since no provision is made for an indemnity fund, the law must else be held unconstitutional under Bloodgood's case, which would work great injury to the telegraph companies, and by it private rights are amply protected, as they must be under a constitutional government.

My conclusion is, that the defendant must make payment precede appropriation, and it is reached in full view of all the consequences. It is known that the electric telegraph is the channel for the transaction of the commercial business of the world. By it space is annihilated and time reduced, modes of business are revolutionized and simplified. It has become the messenger of thought and the medium of communication. It has interlinked states and nations; and millions of capital have effected its construction and extension, and if these views become prevalent they may be embarrassing to these large and useful companies.

Yet the courts cannot turn aside nor close their portals. Constituted for the administration of justice to all alike, before them individuals and corporations are all equal. The voice of the weak and the powerful must impress the judicial ear the same, and all must receive even handed justice.

The plaintiff must have judgment.