(42 App. Div. 243.)

BREWSTER v. J. & J. ROGERS CO.

(Supreme Court, Appellate Division, Third Department. July 6, 1899.)

1. EMINENT DOMAIN—PRIVATE USE.

Where defendant, an upper riparian owner, collects the waters of a stream by a dam, and thereafter discharges it, injuring a lower riparian owner, he cannot justify under the doctrine of eminent domain, where such use of the water is only for his private benefit in floating his logs to market.

2. RIPARIAN OWNERS—FLOATING LOGS—DAMAGES.

By Laws 1893, c. 363, the Ausable river was made a public highway for the purpose of floating logs and timber. No provision was made therein for the assessment or payment of damages. Acts 1897, c. 592, known as the "Navigation Law," embodied in substance Act 1880, entitled "An act to regulate the passage of lumber and logs on the rivers of the state," and provided for the construction of dams and booms and the floating or running of logs down the rivers, and for appraisers of the damages, to be appointed by the county judge, and provided for a bond securing the damages running to the state. It also provided that the owner of the bed of the stream should have compensation, but it did not provide that payment should precede the taking. Defendant, an upper riparian owner, before erecting a dam for the purpose of floating his logs to market, filed a bond under the acts of 1893 and of 1880. Held, that such bond would not cover subsequent damages caused, after the passage of the act of 1897, so that defendant is not in position to obtain the benefits of such act, and for any injury to a lower riparian owner caused by the erection of his dam and the floating of his logs he is liable.

3. SAME—EVIDENCE.

In an action for damages by a lower riparian owner by the acts of an upper riparian owner, evidence of the diminution of the market value of plaintiff's property, occasioned by such acts, is competent.

Appeal from trial term, Essex county.

Action by Byron R. Brewster against the J. & J. Rogers Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Hand, Kellogg & Hale (Richard L. Hand, of counsel), for appellant. Smith & Wickes (Francis A. Smith, of counsel), for respondent.

MERWIN, J. The plaintiff is the owner of a sawmill on the west branch of the Ausable river, and also of two farms, containing about 640 acres, below the mill, and through which the river runs. The plaintiff, in his complaint, alleges that in the years 1896, 1897, and 1898 his mill and dam connected therewith and his farms were injured by the wrongful acts of the defendant, a domestic corporation, in floating down the river large quantities of pulp wood cut from land above. The court found "that during the time stated in the complaint the defendant, by means of a certain dam erected upon the headwaters of the west branch of the Ausable river, collected and stored water and discharged it in large quantities for the purpose of increasing the natural volume and flow of said river, and thereby floating the defendant's pulp wood down the same; that by reason of the defendant's use of said water for such purpose, and the said increase of the natural volume and flow of said river, the plaintiff's mill and farms located upon said river below said dam were injured to the amount

of five hundred dollars." A judgment for that amount was directed against the defendant.

The defendant claims that under the provisions of chapter 363 of the Laws of 1893 and chapter 533 of the Laws of 1880 it has a right to increase, by means of storage dams, the flow of the water for the purpose of floating or driving its logs down the river. By chapter 363 of the Laws of 1893 the Ausable river, including both the east and west branches thereof above the forks, is declared to be a public highway for the purpose of floating logs, timber, and lumber down the same. No provision is made in the act for the assessment or payment of damages. It is claimed, however, by the defendant, that upon this subject the act of 1880 is applicable, and is adequate, and that the plaintiff, if he has suffered damage, is confined to the remedy provided for by that act. That act is entitled "An act to regulate the passage of lumber, logs and other timber upon the rivers of this state, recognized by law or common use as public highways for the purpose of floating and running lumber, logs and other timber over and upon the same to market or places of manufacture." Section 1 provides for the construction of certain aprons in dams thereafter erected on such rivers. Section 2 provides that persons thereafter erecting booms shall, upon notice, open the same so as to permit the passage of logs or other timber. Section 3 provides that persons desirous of floating or running logs or timber down such rivers may construct shutes or aprons in connection with any dam across such rivers, and reconstruct any booms or other works already constructed in such manner as to allow logs to pass by, and may remove obstructions in such rivers, and construct "such other piers, booms or other works as may be necessary for the passage of lumber, logs or other timber over and through the channels of said rivers, doing no injury or damage to the owner or occupant of such boom, dam or other works, or to the owner or occupant of any land on which such piers, booms, dams or other works may be constructed, or lands flooded thereby, and paying to such owner or occupant such damages as he or they may sustain by reason of the construction of such piers, booms, or other works, or the flooding of lands thereby"; the damages in case of disagreement to be appraised by three commissioners to be appointed by the county court. By section 4 it is provided that the provisions of the prior sections shall not be construed to impair or abridge any private or individual rights, except so far as may be necessary for the improvement of the rivers for the said purposes. By section 5 it is provided that any person making claim for damage arising under the act must apply within one year after the occurrence of the same or be debarred from recovery. By section 10 it is provided that any person intending to float or run logs upon the rivers mentioned in the first section shall first execute and file a bond with sufficient sureties in the sum of five thousand dollars, to be approved by the county judge of the county, as an indemnity against any loss or damage that may be occasioned or done to any property in or upon the river or its banks by reason of the use of the river under the provisions of the act, and that any person suffering such loss or damage may maintain an action therefor in his own name against the

parties executing the bond. The act does not state to whom the bond shall run. Section 3, above referred to, was amended by chapter 483 of the Laws of 1897, taking effect May 17, 1897. By this amendment there was inserted after the words "the flooding of lands thereby," last appearing in the part above quoted, the following: "And paying also all damages and loss that may be occasioned or done to any and all property, public or private, in or upon said river or its banks, by reason of the floating of logs or lumber, or by reason of the removal of obstructions in the floatable channel of said river." It also provided for the appointment of appraisers by the supreme court, instead of by the county court, and the following provision was added:

"This act shall apply to all statutes of this state declaring streams and rivers public highways for the floating of logs, unless otherwise provided, and shall be deemed to be supplemental thereto, so far as there is or may be any failure in any of such acts to provide for full and complete compensation to the riparian owner or those having vested rights upon such streams or rivers for any and all damages occasioned by making such streams or rivers public highways for the purpose of floating logs, the intent of this statute being to provide compensation to the riparian owner in all cases where rivers and streams have been declared to be public highways for the purpose of floating logs where no compensation has been provided therein to the riparian owners, and to those having vested rights upon said streams and rivers."

The act of 1880 was repealed by the navigation law (chapter 592 of 1897), taking effect May 19, 1897. The substance of sections 3, 4, 5, and 10 of the act of 1880 were embodied in sections 72 and 75 of the navigation law, except that the appraisers referred to in section 3 were to be appointed by the county judge, and provision was made that the bond should run to the people of the state. The argument of the defendant is that all use of the river proved in this action has been a lawful exercise of the right of eminent domain, fully authorized by the statutes referred to. That depends upon the construction and effect to be given to those statutes. The damage for which a recovery was allowed was, as the court found, not caused by the natural flow of the stream, but by the artificial flow, caused by the use by the defendant of waters drawn from an artificial pond on South Meadow brook, a tributary of the Ausable, some miles above the plaintiff's premises. This pond was produced by a dam constructed by the Alice Falls Company on its land, and used by that company and the defendant, by arrangement between them, for the purpose of driving defendant's logs. No others were interested. There is no doubt that the property of the plaintiff was injured by the unusual flow. The act of 1880 did not, in terms, authorize the private storage of water for individual use as convenience might require, and I very much doubt whether, by fair inference, the statute should be construed to confer such authority. The statute evidently contemplated that any person desiring to float or run logs or timber down the river might prepare the stream for that purpose. It was being treated as a highway, and the parties in interest might make improvements upon it suitable for its particular use. The "other works" which the parties were authorized to construct related to the preparation of the stream, not to the means that any particular person might employ when he actually undertook to use the stream. The

natural flow in high water was the important element to be utilized. But, assume that the statute is broad enough to authorize the acts of the defendant, there are other objections to be considered. The use by defendant of its private storage waters for its private use could not be justified under the doctrine of eminent domain. That is only applicable to cases of public use. In re Niagara Falls & W. Ry. Co., 108 N. Y. 375, 15 N. E. 429; In re Split Rock Cable-Road Co., 128 N. Y. 408, 28 N. E. 506. Here the use was only for the benefit of the defendant and its one associate. The property of the plaintiff, which, in effect, was taken by the defendant, was not taken for a public use. Nor is it clear that the provision for compensation is sufficient to meet the constitutional prohibition against taking private property for public use without just compensation. Ordinarily, the payment of compensation must precede the taking, unless the state or a public corporation is the actor. Dusenbury v. Telegraph Co., 11 Abb. N. C. 440; Lewis, Em. Dom. § 457; Mills, Em. Dom. § 126; Cooley, Const. Lim. (6th Ed.) 693. In Sage v. City of Brooklyn, 89 N. Y. 189, it is said that there must be sure and adequate provision, dependent upon no hazard, casualty, or contingency whatever. In Sanborn v. Belden, 51 Cal. 266, it was held that a bond, with sureties approved, was not a certain and adequate provision for compensation.

There is, however, a further and more radical objection to defendant's position, and one that goes to its right to use the stream at all as a highway. It will be observed that neither the act of 1893 nor that of 1880 made any provision for compensation to the owners of the bed of the stream for the right of passage over their property, or for taking their property for a highway. In this respect the situation was similar to the case of Moose river, under chapter 207, Laws 1851, as amended by chapter 712, Laws 1894. By those acts Moose river was declared a highway for the purpose of floating logs and timber, and it was provided that any person desirous of floating logs or timber down the stream might for that purpose make alterations in booms and dams, doing no unnecessary damage thereto, and paying to the owners thereof all damages they may sustain by reason of the floating of logs and timber, or the alterations of dams or booms; such damages to be ascertained by commissioners to be appointed by the supreme court, as provided for in the condemnation law. The validity of these acts was under consideration in Re Thompson, 86 Hun, 405, 33 N. Y. Supp. 467, affirmed in 147 N. Y. 701, 42 N. E. 726; De Camp v. Dix, 16 App. Div. 528, 44 N. Y. Supp. 1014, affirmed in 159 N. Y. 436, 54 N. E. 63, and it was, in effect, held that, as to the owners of the land over which the stream flowed, the acts were unconstitutional by reason of the failure to make proper provision for compensation In the case last cited, a judgment restraining the defendants from floating logs down the river over the plaintiff's land was sustained by the court of appeals. It would therefore seem that the acts of 1893 and of 1880 were ineffective as to the plaintiff's ownership and control of the bed of the stream, and that the defendant fails to show legal authority for its acts, unless the amendment of 1897 to section 3 of the act of 1880 may accom-

plish that result in whole or in part. Assume that by the section, as amended, it is provided that the owner of the bed of the stream shall have compensation, to be. fixed by commissioners if not agreed upon, it is not, in terms at least, provided that payment shall precede the taking. If the statute is construed to mean that, then it has not been complied with; no payment has been made or amount fixed. If the statute is to be construed as allowing payment subsequent to the taking, then no provision is made for compensation except by a bond. The defendant filed a bond under that section on October 5, 1896, but none has been filed since the amendment. The bond, as filed, would hardly cover damages provided for by a subsequent act. In the absence of a proper bond, the defendant is not in a position to obtain the benefits of the amended act, assuming that in other respects the act is valid, and available to defendant. The amendment of 1897 does not, I think, help the defendant; and it must be held that its acts, of which the plaintiff complains, were without legal authority. It is hardly claimed by the defendant that upon the proofs in this case it can be said that the stream in question was, at common law, a public highway for the purposes of the defendant. The plaintiff therefore had a right to treat the acts of the defendant as wrongful, and bring his action upon that basis, and was not obliged to resort to any remedy provided for in the statutes under which defendant claims.

It is further claimed by the defendant that the evidence does not warrant a recovery to the amount found by the trial court. The stream, in its winding course through plaintiff's farms, passed a distance of over two miles. From 5,000 to 7,000 cords of pulp wood were floated down each year. Evidence was given on the part of plaintiff tending to show that the diminution of the market value of plaintiff's property occasioned by the acts complained of was much more than the amount awarded. Evidence as to such diminution was competent. Hartshorn v. Chaddock, 135 N. Y. 116, 31 N. E. 997. It is suggested that other causes contributed to the injury to plaintiff's property. The damages, however, as found by the court, are such only as are attributable to defendant's wrongful acts. The defendant is only liable for the results of its own acts, and what those were was for the court to determine, having all the facts before it. The evidence, I think, warranted the conclusion reached.

Judgment affirmed, with costs. All concur.