## WILLARD JOHNSON, RESPONDENT, *v.* THE THOMSON–HOUSTON ELECTRIC COMPANY, APPELLANT.

*Electric-light poles erected to light the streets in villages — right of the village trustees to authorize their erection notwithstanding the objections of owners of abutting property.*

The act incorporating the village of Fulton conferred upon the board of trustees thereof jurisdiction and control of the streets therein. This board granted to the Thomson-Houston Electric Company a license to erect poles and wires in the streets and grounds of the village for the purpose of supplying electricity for electric lights to be used in lighting the streets of the village, and also for private use. The company thereupon erected a pole in one of the streets of the village, in front of the premises of one Johnson, without obtaining his consent.

Upon the trial of an action, brought by Johnson to restrain such action on the part of the electric company, the court decided that the license of the board of trustees did not justify the erection or maintenance of the pole and directed its removal.

*Held*, that the court erred in so deciding.

That, under the license given by the trustees, the electric company had the right to erect this pole, and to use it for the purpose of supplying the electricity necessary to light the streets, and to use it as a point from which to suspend a street light.

That the fact that the court had found "that this pole * * * was not necessary for the public use alone, and there were other places where it might have been located so as to answer the same purpose," was not an answer to the right claimed by the electric company, as it was conceded on the trial that this pole "was convenient and reasonably necessary to the furnishing light for public and private use."

APPEAL from a judgment, rendered upon a trial at a Special Term held in Oswego county, which was entered in the office of the clerk of Oswego county on the 13th day of March, 1889, in favor of the plaintiff, requiring the defendant to remove a pole erected by it in one of the streets of the village of Fulton in front of the plaintiff's premises.

*Giles S. Piper*, for the appellant.

*Mead & Stranahan*, for the respondent.

MARTIN, J. :

We are of the opinion that the plaintiff was not entitled to the relief awarded by the judgment herein. The defendant erected a pole in one of the streets of the village of Fulton in front of the plaintiff's premises without his consent. The board of trustees of the village granted to the defendant a license to erect poles and wires in the streets and grounds of the village. The act incorporating the village conferred upon such board jurisdiction and control over the streets therein. The special Term found that the board had power to maintain lights in the streets of the village, and to procure and erect necessary fixtures for lighting such streets. The pole in question was erected for the purpose of supplying electricity for electric lights to light the streets of the village, and also for private use. It was also intended that a street light should be suspended therefrom. The learned trial judge held that the license of the board of trustees did not justify its erection or maintenance, and directed its removal.

It must be admitted that the streets of a populous village or city are subject to greater burdens and to a greater variety of uses than a rural highway, and that the extent of an easement in a street is to be measured by the necessities of the public. In *Lahr* v. *Metropolitan Elevated Railway Company* (104 N. Y., 292), RUGER, Ch. J., said : " Statutes relating to public streets which attempt to authorize their use for additional street uses, are obviously within the power of the legislature to enact. \* \* \* Such are the cases in respect to changes of grade ; the use of a street for a surface horse railroad ; the laying of sewers, gas and water pipes beneath the soil ; the erection of street lamps and hitching posts, *and of poles for electric*

*lights used for street lighting.* All of these relate to street uses sanctioned as such by their obvious purpose and long continued usage, and authorized by the appropriation of land for a public street." In *Tuttle* v. *Brush, etc., Company* (50 Supr. [18 J. & S.], 464), it was held that city authorities had full power over the matter of lighting streets, and might authorize the erection of poles to be used for that purpose. See, also, *Harlem Gas Company* v. *Mayor, etc., of New York* (33 N. Y., 327), and other cases cited in opinion in Tuttle case.

In *Metropolitan Telephone and Telegraph Company* v. *The Colwell Lead Company* (50 N. Y. Supr. [J. & S.], 488), it was held that the streets could not be used for the erection of poles to conduct telegraph and telephone wires, and in the Tuttle case the right to use the street for the purpose of supplying electricity to private persons was doubted. We think it quite clear that the trustees of the village of Fulton had power under and by virtue of the provisions of the charter to authorize the defendant to erect a pole in question for the purpose of lighting the streets of the village. That the board could properly authorize its erection for the purpose of supplying light for private use may well be doubted, as it could not devote the street to purposes other than those for which it was intended without compensation to the owner. (*Mahady* v. *The Bushwick R. R. Co.*, 91 N. Y., 148.) We think it must be held that, under the license given by the trustees, the defendant had the right to erect this pole and use it for the purpose of supplying electricity necessary to light the streets in that vicinity, and to use it as a point from which to suspend a street light. One, and perhaps the chief, purpose of locating the pole at this place was to furnish a proper light for the streets in that locality. So far as its erection was for that purpose, it was lawful, and did not invade the plaintiff's just rights. The fact that the defendant might have intended to use it for other and unjustifiable purposes may have entitled the plaintiff to an injunction restraining such unauthorized use, but did not, we think, entitle him to have it wholly removed so long as it was reasonably necessary and proper for the public service.

It is true that the court found " that this pole    *    *    *    was not necessary for the public use alone, and there were other places where it might have been located so as to answer the same purpose."

Whether the trial judge intended by this finding to decide that no pole was necessary at that place for public use, or whether his intention was to find that it was not alone necessary for that purpose, but was also necessary for private use, is not quite clear. If the former, it is, we think, adverse to the concession of the parties and against the weight of the evidence. On the trial it was conceded that this pole " was convenient and reasonably necessary to the furnishing light for public and private use." This concession involved the necessity of this pole to furnish light for public as well as for private use, and the evidence tended to show quite conclusively that such a pole in that vicinity was necessary for the proper maintenance of a street light which was required at that place. We do not think it an answer to the right claimed to say that this pole might have been placed on the land of others. If it was necessary that it should be located in that vicinity, the burden could as properly be imposed upon the street in front of the plaintiff's premises as upon the street in front of the premises of his neighbor.

Upon the evidence, admissions and facts, as presented on this appeal, we are of the opinion that the judgment directing the removal of the pole in question was not justified; that the court erred in directing such judgment, and for that error the judgment should be reversed.

The judgment should be reversed, with costs to abide the event.

HARDIN, P. J., concurred; MERWIN, J., not sitting.

Judgment reversed on the exception and a new trial ordered, with costs to abide the event.