ELECTRIC CONST. CO. *v.* HEFFERNAN *et al.*

(*Supreme Court, General Term, Third Department.* November 26, 1890.)

1. INJUNCTION—ABATEMENT OF NUISANCE.
   Plaintiff contracted to furnish the village of S. with electric lights. The village of V. lay immediately south of the village of S., a street running east and west being the dividing line. It was alleged that the trustees of V. had given plaintiff authority to erect poles. Two poles having been erected on the south side of the street in front of a church, the congregation cut them down and made a riotous demonstration upon an attempt being made to re-erect them. *Held,* that a temporary injunction to restrain interference with the poles should be granted.

2. SAME.
   If the poles were a nuisance defendants had no right to remove them, it not appearing that they interfered with their use of the street.

Appeal from special term, St. Lawrence county.

Action by the Electric Construction Company against Jeremiah Heffernan and others. Defendants appeal.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Edwin Countryman*, for appellants.   *E. J. Brackett*, for respondent.

LEARNED, P. J.   The plaintiff is a corporation engaged in the business of electric lighting, and has a contract with the village of Schuylerville, to furnish its streets with electric lights.   The village of Victory lies immediately south of Schuylerville, and the center of Burgoyne street, running east and west, is the dividing line.   The plaintiff put up poles for lighting on the north side of Burgoyne street, from the east end, till it reached Gates avenue.   Then it erected poles on the south side, to hold wires.   Two poles 50 feet high were placed in front of the church of the Visitation, which stands on the south-west corner of Gates avenue and Burgoyne street fronting on Burgoyne, and in the village of Victory.   These poles were cut down a few days afterwards, and, when plaintiff attempted to dig holes to put up new poles, the defendants interfered, and riotously prevented the erection of the poles, and threatened to cut down any which should be erected.

The plaintiff brought this action to restrain, by final judgment, any such interference with its poles; and the plaintiff obtained, on motion, an injunction pending the action to the same effect, from which the defendants appealed.   Said injunction was granted on the complaint and affidavits presented on each side.

Several points are raised on this appeal.   It is insisted by the plaintiff that the Church of the Visitation is not the owner of the fee of any part of Burgoyne street, while defendants insist that it is.   So far as this action is concerned, we think the matter is not very material.   *Lahr* v. *Railway Co.*, 104 N. Y. 269, 10 N. E. Rep. 528.   If it should become important to decide the question, we should be of the opinion that the description of the land in the deed to the church did not convey any part of the street.   The starting point is in the west bounds of Gates avenue, 150 feet southerly from the south bounds of Burgoyne street.   The last course is from Burgoyne street, 150 feet along said avenue, to the place of beginning.   The *Lahr Case*, above cited, recognizes the right of the legislature to authorize the use of public streets for many purposes besides that of mere travel.   Among these are the laying of sewers, gas-pipes, water-pipes, and the erection of poles for electric light, used for street lighting.   The same is recognized in *Johnson* v. *Electric Co.*, 7 N. Y. Supp. 716.   In that last case a doubt is expressed whether the municipal authorities could authorize the erection of poles for supplying light for private use.   The reason given is that such use would entitle the owner to compensation.   *Mahady* v. *Railroad Co.*, 91 N. Y. 148.   Now it must be noticed that although the owner may be entitled to compensation in such a case, it does not follow that he has any other right.   And we should think that municipal authorities might authorize the laying of water-pipes in streets, even though the principal, perhaps the sole, use should be to supply the private needs of citizens.   Therefore, we are not ready to say that proper structures, intended to supply electric light to all private houses which might need it, would be an unlawful use of the public street.   In the present case two positions are urged by the defendant.   One is that no authority was actually granted by the trustees of Victory; the other, that, if such authority was granted it was only to facilitate the plaintiff in its business of lighting Schuylerville, and had no reference to the public or private lighting of Victory.

The affidavit of the president of the board of trustees of Victory, and also one of one of the board, and the affidavit of the president of plaintiff, state that about May 14, 1890, at a meeting of the board, resolutions were passed authorizing plaintiff to erect poles for the purpose of lighting the village; that this was done pursuant to a vote of the taxable inhabitants, authorizing the trustees to provide for such lighting.   In opposition, the clerk of the village

v.12N.Y.s.no.4—22

makes an affidavit that the book of minutes shows a meeting on that day, and that no such resolutions were passed. He further states that a tax-payers' meeting was held May 3d, with a full board of trustees present, at which a resolution was passed to the effect that the trustees be empowered to make all contracts for lighting the village with electric lights. He further states that on the 23d of June, 1890, a resolution of the board was passed affirming that, on the 14th day of May, they met the president of plaintiff, as a board, and gave him leave to erect poles for lighting the village with electricity. It does not appear that the village has made any contract with the plaintiff for lighting its streets. It is very possible that the plaintiff, for some reason, in its business of lighting Schuylerville, desired to erect poles for a distance on the south side of Burgoyne street. But that desire is not inconsistent with a plan of furnishing light to Victory, both to its streets and its private houses. The villages are close together, and the same plant may serve for both. We ought not, especially in this preliminary matter, to assume that the poles which the plaintiff has erected are not to be used for the benefit of Victory. It is averred in the complaint that these poles are a part of the pole line necessary to string the wires to furnish light for Victory. If this is so, the fact that they are also connected with the Schuylerville line does not make them objectionable.

On the question whether authority was given by the trustees, it appears that the municipal authorities consists of a president and three trustees. Two of these state that the authority was given at a meeting of the board, on due notice. None of them deny it. No action is taken by the village questioning the authority thus given. We think, therefore, that the special term was justified in holding, upon this motion, that authority had been given. There is still another consideration. The defendants must have cut down these poles, on the claim that they were a nuisance, obstructing the highway. In *Harrower* v. *Ritson*, 37 Barb. 301, there is a very elaborate discussion as to the rights of a private individual in respect to obstructions in the highway, and the conclusion is that if there be such a nuisance a private individual can interfere with it only so far as is necessary to exercise his right of passing along the highway. "He may remove that which interferes with his rights to the extent necessary to the reasonable enjoyment of the right of which the thing interposed would deprive him, doing no unnecessary damage. A party, by erecting a nuisance, does not put himself or his property beyond the protection of the law." There is nothing in this case showing that the poles interfere with defendants' use of the highway. Under the case last cited, therefore, the defendants could not lawfully cut down these poles, even if it be assumed that they are a nuisance, and could be abated by action. We do not wish to decide on the merits of this case as it may appear upon the trial. The only question is whether, on the facts before the special term, the injunction was properly granted. It may appear on the trial that special damage is occasioned by these poles, for which the church should be compensated; but we think that the defendants should not be allowed to destroy the plaintiff's property, as they have done. Order affirmed, with $10 costs and printing disbursements. All concur.