GULF COAST ICE AND MANUFACTURING COMPANY *v.* EATON
J. BOWERS.

1. BAY OF ST. LOUIS. *City of. Charter. Laws* 1886, *p. . 446, sec. 42.
   *Street lights.*

   The city of Bay of St. Louis, under its charter (laws 1886, p. 446.
   sec. 42), is empowered to light its streets for the public benefit.

2. MUNICIPALITIES. *Acquisition of streets. Rights therein. Lights.*

   The acquisition of property by a municipality for public use as a
   street carries with it the right to make passage over it safe and
   convenient, and to light it for that purpose.

3. SAME. *Lighting street not a new taking. Constitution* 1890, *sec.* 17.

   The lighting of a street previously acquired by a municipality is
   not a new taking of the property for public use, for which com-
   pensation must be made to the owner of the fee or to abutting
   owners, but is an extension of the uses for which it was first
   taken.

4. SAME. *Streets lighted by contract.*

   Municipalities having the right to light streets may contract with
   another to furnish the lights, and license the use of the streets
   for that purpose.

5. SAME. *Poles and wires. Inconveniences. Disfigurements.*

   Such inconveniences to the person and disfigurements of adjacent
   property as result from the erection of electric light poles and
   wires in a street, if subjects of compensation at all, are conclu-
   sively presumed to have been paid for in the original acquisition
   of the street.

6. SAME. *Furnishing electricity to private persons. Mandatory injunction.*

   The furnishing of electricity to private persons from necessary
   wires erected upon and used for the purpose of lighting the
   streets of a municipality, is not a grievance to adjacent property
   owners, for which a mandatory injunction is an appropriate
   remedy.

7. MANDATORY INJUNCTION. *Code* 1892, §§ 557, 916. *Ex parte applications for. Rule.*

While the statutes (code 1892, §§ 557, 916) authorizing the granting of injunctions on *ex parte* applications makes no distinction between the several kinds of injunctions, yet a mandatory injunction should not be granted unless there can be no reasonable doubt of its propriety, and it is the safer course to hear both sides before authorizing the issuance, if the ground for preliminary issuance be not inexpugnable.

FROM the chancery court of Hancock county.

HON. STONE DEVOURS, Chancellor.

Bowers, appellee, was complainant in the court below; the Gulf Coast Ice and Manufacturing Company, a co-partnership, appellants, were defendants there.

The facts are these: Appellee Bowers was the owner of several pieces of valuable and handsome residence property in the city of Bay St. Louis. These residences front on the sea coast, and between them and the beach the public street passes. The value of appellee's property was enhanced by having an unobstructed view of the gulf. The appellants claimed and had a franchise from the city authorities to erect poles and string wires in front of appellee's residences along the street. The appellee denied the power of the city to grant this franchise. Before erecting the poles and stringing the wires along the street, the appellants had some negotiations with Bowers looking to the acquisition of his consent thereto. Failing to obtain consent, the appellants erected the poles and strung the wires without appellee's permission. Bowers sought to deal kindly with the appellants, and had an interview with them in which an instrument was presented, and which the appellants agreed to execute, by the terms of which the appellee's rights were recognized; but the appellants finally withdrew from their agreement to execute the paper, and denied that appellee had any rights in the premises. Thereupon the appellee procured a mandatory injunction directing appellants to move their poles and wires from the street in front of appellee's property. The

appellants complied with the injunction, but in a short time after the removal of the poles and wires an amicable adjustment was reached between the parties by which the appellants replaced their poles and wires, and the question of right was left to be determined on the final hearing of the case. The court below respected the agreement between the parties, and modified the injunction so as to make it conform therewith, but refused to dissolve it altogether, and the appellants appealed to the supreme court from the decree continuing the injunction as modified.

*W. J. Gex,* for appellant.

A preliminary mandatory injunction should never issue until the end of the controversy. This is the general rule. *D. & N. O. R.* v. *A. T. & S. F. R. R. Co.,* 13 Fed. Rep., 546; *Gale* v. *Abbot,* 8 Jur. N. S., 987; *McCauley* v. *Kellog,* 2 Woods (U. S.), 13; *Andenried* v. *Philadelphia, etc., R. Co.,* 68 P. A. St., 378; *Laughlin* v. *Railroad Co.,* 4 W. N. C. (Pa.), 463.

The only cases in which such injunction were ever issued on *ex parte* applications were cases in which the public interests were blended with that of complainant, and the injunctions were granted with a view, particularly, of protecting the rights and interests of the public.

When, by the charter of a municipality, the power is given to its governing body, by express words, to light its streets, parks, and other public places, by virtue of this power the municipality has the right to erect or to authorize the erection of poles in the street for that purpose, and an abutting owner cannot obtain an injunction against the erection of such poles. *Halsey* v. *Rapid Transit St. R. Co.,* 47 N. J. Eq., 380; *Loeber* v. *Butte Gen. Electric Co.,* 16 Mont., 1; 5 Am. Elec. Cases, 130.

When under the proper permission an electric light company erects its poles and wires in the streets of a municipality, for the purpose of lighting the streets and public places of

the municipality, no additional servitude is imposed, and abutting owners are not entitled to damage. *Newport* v. *Newport Light Co.,* 84 Ky., 166; 50 N. Y. Sup. Ct., 464; *Johnson* v. *Thompson-Houston Electric Co.,* 54 Hun. (N. Y.), 469; *Lahr* v. *Metropolitan El. R. Co.,* 104 N. Y.; *Province Gas Co.* v. *Thurber,* 2 R. I., 15; Pittsburgh's Appeal, 6 Cent. Rep., 225; *State* v. *Boyce,* 43 Ohio St., 46. The Law of Eminent Domain, by C. F. Randolph, sec. 401, p. 365; 10 Am. & Eng. Enc. Law, 866.

That the poles of defendant electric light company, since they are necessary to the lighting of the public highway, are lawfully placed in the street, in front of plaintiff's land, is settled beyond question. *Consumers' Gas and Elec. Light Co.* v. *Congress Spring Co.,* 61 Hun., 133; *Electric Con. Co.* v. *Hefferman,* 34 N. Y., 436; *Johnson* v. *Thompson-Houston Elec. Co.,* 54 Hun., 469; *Tuttle* v. *Brush Electric Illuminating Co.,* 18 Jones & S., 464.

On this point we invite the court's attention to the case of *Palmer* v. *Larchmont Elec. Co.,* 43 L. R. A., 672, and the notes there found. This was an action in ejectment to compel the defendant to remove its poles and wires from Palmer avenue, in front of the plaintiff's premises. The court in this case makes the distinction between telephone poles and wires and electric light poles and wires, which distinction this court will certainly have to make.

*Harper & Harper* and *Harper & Potter,* on same side.

The writ of injunction is the most powerful and dangerous weapon within the control of the judiciary. When used with judgment and discretion, it may be the means of accomplishing much good, but when directed by irresponsible men, or prostituted by designing or vicious men, it at once becomes a menace to the rights and liberties of the people. Therefore our appellate courts should restrain with a firm and fearless hand any effort at an undue extension of the scope of this writ,

however plausible the excuse, for each abuse quickly ripens into precedent, and becomes an argument for further extension of arbitrary power.

The petition or bill in this case wholly fails to show any ground upon which a preliminary mandatory injunction should be granted, even if it be considered to be a proper writ in any case. On the contrary, it sets out such facts as clearly show that such injunction was wholly unwarranted.

This court will bear in mind that the mandatory injunction was strictly a judicial writ as late as the time of Story; *i. e.,* a writ issued to carry into effect a final decree. Then in the course of time it came to be used as an interlocutory writ; *i. e.,* a writ issued after the parties had been brought into court to maintain the *status quo* until final hearing, but as such it was only used in cases in which it was necessary in order to effectively maintain the *status quo*. But latterly a few of the federal courts have granted it in the first instance as a preliminary writ, but only in cases where the public interests seemed to demand immediate action, and such protection of the public interests has been the sole excuse and justification for the writ, as a preliminary writ. But in the case at bar it has been used to enforce purely private rights, in the face of the public interests involved, which public interests were sufficiently disclosed by the bill itself. So we insist that even under the revolutionary and far reaching decisions of a few of the federal courts this preliminary mandatory injunction ought never to have been issued in the case at bar.

A reading of the preliminary writ will show that it is in language, operation and effect, a final decree, for the wires and posts are ordered to be removed within twenty-four hours, and the final decree could do no more.

It makes no difference whether the city of Bay St. Louis owned its streets in fee or not. The uniform current of authority is that the erection of poles and wires for lighting the street is essentially a street purpose, and does not impose an

additional servitude, for which the abutting owner is entitled to compensation.

This court, along with most others, has properly held that the erection of telegraph poles and wires does impose an additional servitude on public streets, because the same is purely a private purpose. The courts are divided as to whether the erection of telephone poles and wires impose an additional burden on the public streets, and on this point this court has never passed. But the uniform current of authority is to the effect that the erection of poles and wires on the public streets by permission of the public authorities does not impose an additional servitude, and that an abutting owner, even though he holds the fee to the street, has no cause of action therefor. It seems hardly necessary to cite authorities at length in support of a proposition that appeals so strongly to our common sense, because it is necessary to light the public streets in order that the public may conveniently use the same. But we will refer to some of them. *Palmer* v. *Electric Light Co.,* 43 L. R. A., 674; *Johnson* v. *Thompson-Houston Electric Co.,* 54 Hun., 469; *Consumers' Gas & Electric Light Co.* v. *Congress Spring Co.,* 61 Hun., 133; *Witcher* v. *Holland Waterworks Co.,* 66 Hun., 619; affirmed, 142 N. Y., 626; *Hequembourg* v. *Dunkirk,* 49 Hun., 550; *Sun Printing & Pub. Asso.* v. *New York,* 152 N. Y., 257, 265; 37 L. R. A., 78; *Van Brunt* v. *Flatbush,* 128 N. Y., 50, 56; *Eels* v. *American Tel. & Tel. Co.,* 143 N. Y., 133 (25 L. R. A., 640).

These are a few authorities that hold that when the poles are erected for purely private purposes and private gain, that this constitutes an additional servitude. But when the lighting of private houses is a mere addition and incident to the lighting of the public streets, or where the same wires and poles are used for lighting both the public streets and private house, the authorities are practically unanimous that this does not constitute an additional servitude. Keasbey on Electricity.

*McWillie & Thompson,* for appellee.

We scarcely think that the question of the rightful issuance of the mandatory injunction is now involved, since by agreement of parties it was modified and the rights of the litigants passed to the hearing of the merits of the cause for adjudication. The courts of this state have too much of serious business to spend time in the consideration of mere matters of procedure when no substantive right is involved.

It is shown, we think, beyond cavil that the value of our client's property, its market value, was materially diminished by the erection of the poles and wires, and we therefore proceed to what we regard as the important question in the case.

Has the city of Bay St. Louis authority to empower private persons, appellants, to erect poles and string wires along the streets in front of complainant's residences without in any way compensating him for the damage done his property? We deny the right, and we think it can be maintained by authority that the case falls within the protection of sec. 17 of our constitution, providing that private property shall not be taken for public use without just compensation first paid or tendered.

It must be noted in this case that the purpose of appellants in erecting the poles and wires was manifestly to supply electricity to private customers, and it was not their purpose alone to light the streets. It will be observed that there is no controversy in the record as to the relative rights of the municipality and Mr. Bowers to the street. Mr. Bowers owns the fee, and the public, represented by the city, has an easement in the street for the passage of persons, animals, and vehicles. In other words, the street had by lapse of time become dedicated as a street or highway. It has been decided in this state that telephone and telegraph wires cannot be strung along a street, even with the permission of the municipal authorities, without compensation to the abutting owners in the event damage is done to their property. *Stowers* v. *Postal Tel. Co.,* 68 Miss.,

559.   It has also been decided that a city cannot lower the grade of a street, if thereby it causes damage. to the adjacent property, without being liable to the property owner for such damages.   *Vicksburg* v. *Herman,* 72 Miss., 211.   And it has been further decided that the permission of municipal authorities to telephone companies to string their wires along the curb of the sidewalk, next to the roadway of a street, and there to cut trees, does not empower the company to disregard the rights of abutting owners.   *Cumberland Tel. & Tel. Co.* v. *Cassedy,* 78 Miss., 666.

If the defendants in this case have the right to put up poles in front of complainant's residence at considerable distances apart, they have the right to locate them as close together as they may see proper. · If they may rightfully place their poles fifty yards apart, they may do so fifty feet apart, or five feet apart, or one foot apart, or one right against the other. It will not do to say that lighting the street is not an additional servitude.   If we should, however, admit the premise, contrary to the weight of authority, it does not follow that complainant has no right.   Certainly the maintenance of the poles and wires is an additional servitude, although lighting the street, in a general sense, should be held not to be an additional burden. There is a great deal of difference in this world in the way in which things are done. We do not always look to the result as determining the nature of the instrumentalities used. But the question is not one of servitudes, but one of damage to the complainant.   The constitution says that his property shall not be damaged for public use without just compensation.   If a new mode of use of a public highway should be inaugurated, which unquestionably injuriously affected adjacent property to an extent one thousand fold greater than it had been damaged or injured by the customary use, our constitution would protect the rights of the land owner and impose upon the public, or the body which had introduced the new use, the duty of compensation for the injury done.   Of course this question is

not one of the extent of damage, because the amount of damage suffered does not determine substantive right. He whose damages are small, has as great a substantive right as one whose damages are a thousand fold greater. It will be noted, however, and this circumstance makes the case strong against the appellants, that the defendants were obstructing the property in controversy, not alone for public benefit, lighting the street, but for the purpose of carrying electricity to private consumers; and it will be further noted that the defendants themselves did not have the power of eminent domain.

The court has held in several cases where the fee to the land used as a street was in the city, and the city had full power to authorize the placing and use of certain obstructions therein, that the right of abutting owners, under sec. 17, constitution 1890, to recover of the city's licensee to the full amount in which they were damaged, was in nowise impaired. While these were cases involving such obstructions as telegraph poles and railway tracks, the decisions turned on the constitutional provision to the effect that private property shall not be "damaged" for public use without just compensation. The city of Bay St. Louis could certainly have had no more right to authorize the erection of electric light poles than a municipality which owned the streets in fee had to authorize the laying of railway track or the erection of telegraph poles. In both cases the question would be one, not of right in the municipality, but of the extent to which the abutting owner could claim to be damaged under the constitutional provision. *Railway Co.* v. *Bloom,* 71 Miss., 246.

The intention of this court to give the fullest effect to the constitutional provision enlarging the right of the property owner has been abundantly manifested. *Richardson* v. *Levee Commissioners,* 77 Miss., 533; *Vicksburg* v. *Herman,* 72 Miss., 211.

It has been held in the case of a street railway, which is treated as merely a new and convenient method of passage,

and therefore incidental to the use of the ground as a street, that under a constitutional provision like sec. 17 of our constitution, it is immaterial whether the maintenance and use of the track constitute an additional servitude or not, the sole question being whether or not the property of the abutting owner is damaged. *Campbell* v. *Metrop, St. R. Co.,* 82 Ga., 320.

See, also, where a change of grade in a street was enjoined under a like constitutional provision, the damage sustained by an abutting owner was held sufficient ground to restrain the city, although there was no question as to its right to make the change of grade on indemnifying the owner. It was further held that as the compensation must be first made, no question could arise in the injunction suit as to whether the damage was irreparable or not, or whether it was small or great. *Searle* v. *Lead,* 39 L. R. A., 345; Keasbey on Electric Wires, 107.

In a telephone company case it was held that while the transmission of intelligence is, like transit, a street purpose, the erection of telephone poles and wires entitled abutting owners to damages when the dedication of the street, as in this case, had been for the purposes of passage by persons and vehicles which would only temporarily occupy the streets in going from place to place, the location of poles in the street was a permanent taking of a part of the street, and constituted an additional servitude not contemplated at the time of the dedication, and would entitle abutting owners to damages. *Kreuger* v. *Wis. Tel. Co.,* 50 L. R. A., 298; *Vide,* also, 43 L. R. A., 554, note.

It appears that whether the use made of a street by a street electric railway company is an additional burden, depends upon whether the appliances (tracks, poles, an dwires) permanently and exclusively occupy a portion of the street. *Jaynes* v. *Omaha St. R. Co.,* 39 L. R. A., 751.

That the poles and wires of electric light plants impose an additional servitude upon the property of abutting owners

seems to be the approved views. Croswell, secs. 117, 125, 126. In New York it has been held that the construction of a street railroad imposes an additional burden upon the property of an abutting owner who has the fee in a street upon the ground of a permanent and exclusive occupation of a part of the street. *Craig* v. *Rochester, etc., Co.,* 39 N. Y., 404.

The New York cases seem to turn to a considerable extent upon whether the fee is in the city or the abutting owner. *Eels* v. *American, etc., Co.,* 25 L. R. A., 640; *Reining* v. *New York, etc., Co.,* 14 L. R. A., 133; *Fifth National Bank* v. *New York Electric R. Co.,* 24 Fed. Rep., 116. The same distinction is recognized in *Illinois Telegraph Co.* v. *Barnett,* 47 Am. Rep., 457.

But in this case the defendant did not alone use their poles and wires to light the streets, but also to supply private consumers.

In 10 Am. & Eng. Enc. Law (2d ed.), 868, we find the law in such case to be stated as follows: "Where the purpose of the company is to supply light to private persons, it seems that abutting owners must be compensated for the use of the streets," the following authorities being cited in support of the text: *Johnson* v. *Thompson, etc., Co.,* 54 Hun. (N. Y.), 469; *Tuttle* v. *Brush & Co.,* 50 N. Y. Sup. Ct., 464; *McLean* v. *Brush Co.,* 9 Cin. Wkly., 1; *Bul. Light Co.* v. *Hart,* 13 Pa. Co. Ct. Rep., 369; *Electric Con. Co.* v. *Hefferman* (Sup. Ct.), 34 N. Y. St. Rep., 436. See, also title "Abutting Owners," 1 Am. & Eng. Enc. Law (2d ed.), 241.

That the damage to the complainant may be small in nowise affects his right. *Eels* v. *Tel. Co.,* 25 L. R. A., 645; *Searle* v. *Lord,* 39 *Ib.,* 345; Keasbey on Electric Wires, sec. 135.

The authorization to provide for lighting the streets of the city contained in the charter of Bay St. Louis did not authorize that municipality to give to the defendants, composing a partnership, a franchise to put the streets for their private gain to a use not public with no adequate reservation of control to

insure efficiency and prevent extortion. The power of the municipality was not greater than the authority conferred by its charter, and the special grant contained in the ordinance falls under the condemnation of the following authorities: *State* v. *Murphy,* 34 L. R. A., 369; *Pikes Peak Co.* v. *Colorado Springs,* 105 Fed. Rep., 8; *Davis* v. *New York,* 67 Am. Dec., 186; *Sharp* v. *Milhan,* 8 L. R. A., 487, note.

Argued orally by *W. J. Gex* and *W. R. Harper,* for appellant, and by *T. A. McWillie,* for appellee.

TERRAL, J., delivered the opinion of the court.

The municipal authorities of the city of Bay St. Louis was empowered by its charter (sec. 42, p. 446, laws 1886) to light the streets of the city for the public benefit, and on the 21st day of December, 1899, made a contract with the appellant company for that purpose. In pursuance of this authority and contract, the appellant erected poles on and along the streets of said city, and attached to them the wires and other necessary appliances for lighting the streets with electricity, and inaugurated and put in operation an electric light plant, which lighted the streets of the city in conformity with their authorization and contract. The appellee is the owner of four or more properties abutting on Front street, which is the principal street of the city, and its crowning glory, and along said street and adjacent to the lots of appellee, and without his consent, the appellants erected their poles and strung their wires, to the great disfigurement, as is said, of the view from said several properties of appellee. The properties or lots of appellee upon Front street extend to both sides of the street, and a considerable element of their value, it is alleged, consists of an open and unobstructed view of the Mississippi Sound. Appellee, alleging in his bill of complaint the inauguration by appellants of said electric plant and the erection of their poles along the streets abutting his several properties, without his consent, and to his

great injury and annoyance, sought and obtained a preliminary mandatory injunction requiring appellants within twenty-four hours to remove from his lots, as a nuisance, thier poles, wires, and other appliances for lighting the streets. The injunction was subsequently modified so as to restore the poles, wires, and appliances removed thereunder; but from a refusal of the court to dissolve the injunction entirely the appellants bring their appeal.

The authorities are quite uniform that a city or town may light its streets as a means of making them more safe and convenient for public travel. The right to light the town is presumed to have been acquired and paid for, as incident to the right of public passage, when the property was condemned or dedicated for public use. In other words, the taking of the land for use as a street includes not only the right of passage, but of securing a convenient and safe passage; to light it, if you please, for that purpose. It is not a new taking of property for public use, but a completing to that extent of the uses of the first taking by adding appliances included within it, and now constructed by reason of the public need. Keasby, Electric Wires (2d ed.), secs. 29, 76, 77, 82, 84; Lewis, Em. Dom. (2d ed.), sec. 126; *Palmer* v. *Electric Co.* (N. Y.), 52 N. E., 1092 (43 L. R. A., 672); *In re Public Lighting* (Mass.), 24 N. E., 1084 (8 L. R. A., 487); *City of Newport* v. *Newport Light Co.,* 84 Ky., 166. While the lighting of the streets of a city may be a great convenience to the traveling public, especially under some conditions, the poles, wires, and other necessary. appliances for so doing are often a positive inconvenience to the abutting landowner, considered merely as such. But the proprietary rights of the landowner, whether the fee or a mere easement thereon be in the public, (*Theobold* v. *Railway Co.,* 66 Miss., 279 (6 So., 230; 4 L. R. A., 735; 14 Am. St. Rep., 564), are greatly modified by the rights of the public, which is entitled to a free passage over the street, and to the benefit of lights constructed and operated for that end.

And if a town or city may light its streets, as being an object for which the street is opened, without paying the abutting property owner damages for the erection of needed appliances therefor, it must follow that the municipal authorities may authorize some other person to furnish such lights. Keasby, Electric Wires (2d ed.), sec. 111; *Johnson* v. *Electric Co.,* 54 Hun., 469 (7 N. Y. Supp., 716). It is said the poles and wires of appellant are unsightly, and are a disfigurement to the property, and an especial injury in that it obstructs the open view of the sea. Similar erections in all cities and towns present, though perhaps in a less degree, like inconveniences to the owners of palatial residences, but disfigurements of this kind to property are not the subjects of compensation, or, if so, they are conclusively presumed to have been paid for upon the opening of the street and its dedication to public use.

It is further said that the poles used by appellant are green pine poles, with the bark peeled, and, from rapid decay, are dangerous, and not lightwood poles, as required by the city ordinance; but this grievance, if true, is not made a subject of controversy under the allegations of the bill of complaint herein, which are not framed to present it.

It is also complained that the electric light system of appellant is partly used for private purposes, but it appears from the record that all the poles set by appellant are necessary for executing the objects of public convenience, and in such case a mandatory injunction is not an appropriate remedy. *Johnson* v. *Electric Co.,* 54 Hun., 469 (7 N. Y. Supp., 716); Keasby, Electric Wires (2d ed.), sec. 30.

2. The contract of the authorities of the city of Bay St. Louis with appellant, as disclosed in this proceeding, is a valid contract, and authorized the latter to make the erections for lighting the streets of the city, and we see nothing in the mode of construction or operation of the plant that authorizes an injunction of any kind.

An injunction may not be granted in this state except where

right and justice demand it, and then only when the grounds for its issuance have been satisfactorily shown to the officer granting the writ. Code 1892, §§ 557, 916. Our statute makes no distinction in respect to the several kinds of writs of injunction; but in respect to mandatory injunctions, which partake of the character of judicial process, it is a sound rule that a writ of this character should not issue unless the right to it is so satisfactorily shown that there can be no reasonable doubt of its propriety. The case made should be such that there can be no probability that the defendant can make a valid objection to it. Unless the grounds for a preliminary mandatory injunction be inexpugnable, it is the safer rule to hear both sides, before directing its issueance. Pom. Eq. Jur., sec. 1359; High, Inj., sec. 2; Story, Eq. Jur., ch. 23.

The grant of the preliminary mandatory injunction in this case was error. In fact, the case presented by the bill does not warrant an injunction of any sort; wherefore the injunction is dissolved, and the case is remanded for further proceedings.

*Reversed and remanded.*